[No. 184. Decided October 23, 1891.]

JOHN E. JONES, *Respondent*, v. GEORGE JENKINS AND MICHAEL C. HANSON, *Appellants*.

MALICIOUS PROSECUTION—PLEADING—PARTIES—PROBABLE CAUSE—
INSTRUCTIONS—APPEAL—STATEMENT OF FACTS.

Under the appeal act of March 22, 1890 (Laws 1889-90, p. 333), it is only necessary to send up so much of the evidence and proceedings as is required for the presentment of the errors alleged.

A complaint for malicious prosecution against two defendants alleging that they jointly "procured the arrest of plaintiff on a false charge," and "that in procuring the arrest and prosecution of the plaintiff the defendants acted maliciously and without probable cause," sufficiently charges a joint responsibility, although other allegations show that one defendant only swore to the complaint to obtain the warrant for plaintiff's arrest and prosecution.

The fact that plaintiff was bound over by a justice of the peace and was indicted by the grand jury does not show probable cause for instituting proceedin s against him, when the whole proceedings were founded upon the acts and testimony of defendants, and the issue to be tried in the action is as to the maliciousness and falsity of such acts and testimony.

In an action for malacious prosecution, an instruction to the jury that if they find that defendants willfully testified falsely against

2—3 WASH.

plaintiff, they may find that there was no probable cause to warrant or excuse the prosecution, and that the same was malicious, is not erroneous on the ground that express proof of no probable cause is required.

An instruction in such case that the jury may allow plaintiff such sum as will compensate him for injured credit, peace of mind and mental suffering, is not misleading by the use of the word "credit," where it was not claimed the financial standing of plaintiff had been injured nor any testimony offered in regard to it, as the meaning of the term is made obvious by the context.

(Hoyt, J., dissents.)

*Appeal from Superior Court, King County.*

The facts in this case are stated in the opinion.

*Lewis & Gilman (W. V. Rinehart, jr.,* of counsel), for appellants.

*Thompson, Edsen & Humphries,* for respondent.

The opinion of the court was delivered by

Scott, J.—The first point to be considered in this case arises upon a motion made by respondent to have the statement of facts stricken from the record. Judgment was rendered in the cause on the 14th day of July, 1890. On the 21st day of said month appellants filed a purported statement of the facts in the case, for the purpose of having the same settled accordingly, which statement, the respondent claims, totally failed to comply with the provisions relating thereto in the appeal act, approved March 22, 1890, under which this appeal was taken. The respondent objected to the statement offered, and it seems he caused to be prepared a full and complete statement of the facts in the case, which was filed on the 29th day of November, 1890, and was the one adopted and settled by the trial judge. The respondent objected to the settlement of any statement, because the time therefor had lapsed, no proposed statement which substantially complied with the law having been filed within the time prescribed, the statement which was offered within the

time allowed having been rejected on the ground of its insufficiency. For these reasons we are asked to strike the statement of facts from the record. The judge, in his certificate, says that he refused to sign the first statement offered because it did not contain all the material facts, evidence, testimony and exceptions given upon the trial. He caused it to be marked "Exhibit A," and sent up with the record. Secs. 4 and 5 of said appeal act are as follows:

"SEC. 4. In all cases and proceedings in which an appeal lies to the supreme court, any party feeling himself aggrieved may have any material fact or facts, not already a part of the record, made so by a statement of facts. Such facts shall be settled and agreed on in the following manner : The party desiring to settle a statement of facts shall prepare and file with the clerk of the superior court a statement of facts, complete and ready for signing, and shall, within thirty days after the decision, order or judgment to be appealed from was made or rendered, give notice to the opposite party or his attorney that the said statement has been prepared and filed, and that upon a day to be named in said notice he will apply to the court or judge who tried the cause or made the decision, order or judgment complained of, at a place to be named in said notice, to settle and certify said statement of facts. Said notice shall be given within thirty days after the decision, order or judgment is made, and the day fixed for the settling and certifying of the statement shall be at least ten days, and not more than thirty days, after the day of service. The party upon whom such notice is served shall, within ten days thereafter, serve upon the opposite party a written notice, in which shall be stated whether or not the correctness of said statement of facts is contested ; and, if contested, in what particular or particulars the said statement is deficient, incorrect or incomplete. Upon the day named in said notice the said parties, or their attorneys, may appear before the said court or judge. and it shall be the duty of said court or judge to settle between the parties what is the proper statement, and to certify the same. The settling of said statement may be adjourned to a later day by order of said court or judge.

SEC. 5.    The certificate of the judge that said statement
contains all the material facts in the cause or proceeding
shall be sufficient.    In causes of equitable cognizance, where
the appeal is from the final judgment, the said statement
of facts shall contain all the testimony on which the cause
was tried below, together with any exceptions or objections
taken to the reception or rejection of testimony.    In cases
at law the statement of facts need contain no more than
was necessary or proper in a bill of exceptions."

The appellant insists that the statement first proposed
substantially complied with the law; that it is only neces-
sary to send up so much of the evidence and proceedings
as is required for the presentment of the errors alleged,
and that anything which has no bearing upon any of the
errors claimed may be omitted therefrom; and we are dis-
posed to agree with this contention.    Although the judge
is required to certify that the statement contains all the
material facts in the cause or proceeding, this should be
construed to mean only such facts as are material to the
matters to be presented upon the appeal, and that the word
"material" has reference to such matters only, and not to
the issues tried below.    That it was not intended that it
should be necessary to send up all the evidence produced
at the trial in every case appealed, is rendered evident by
the concluding part of § 5, which provides that "in cases
at law the statement of facts need contain no more than
was necessary or proper in a bill of exceptions."    The
difficulty comes in determining what is necessary or ma-
terial for the presentment and determination of errors al-
leged, as to how much or how little the proposed statement
should contain; and here, of course, it is impossible to lay
down any definite rule, as each case is governed by its
own peculiar conditions and circumstances.    A few general
observations can be made, however.    It is contended that
respondents have no means of knowing, at the time the pro-
posed statement is filed, how many or what points the ap-

pellant intends to present an error; that the motion for a new trial, being couched in the most general language, ordinarily covers every possible point without definitely indicating them; that many of these might be abandoned, and that such motion furnishes no guide in these particu-lars, and that the statement itself need not necessarily contain all the points intended to be urged as error upon which the evidence has a bearing; that respondents would be left largely in the dark as to what facts should be made to appear if only such facts as are material to the points to be urged as error are to be sent up; and that, conse-quently, to insure a fair presentment of the case, all the testimony and evidence material to the issues tried should be contained in the statement. The motion for a new trial, where one is made, of course affords no guide herein. It is not the essential office or purpose of such a motion to present for re-argument before the same court questions which have once been disposed of at the trial, although the propriety of including such matters is unquestioned; nor can it serve to raise new questions over the proceed-ings had at the trial which could have been raised then but were not. It is true that the grounds of a motion for a new trial as specified in § 276 of the code may cover about everything; and it is usual to allege most of these grounds in the general language there used, this general statement having been rendered permissible by the act of the legis-lative assembly approved January 31, 1888. Our attention has been called to code §§ 449 and 450, which are as follows:

" SEC. 449. A judgment or order shall not be reversed for an error which can be corrected on motion in an infe-rior court until such motion has been made and overruled.

" SEC. 450. The supreme court may review and reverse on appeal or writ of error any judgment or order of the district court, although no motion for a new trial was made in such court."

Section 449 evidently relates to matters other than those which are grounds for a new trial, and which the party had no opportunity to otherwise raise, such as a mistake made in the rendition or entering of judgment, and it is not in conflict with § 450. From all of these, and from the reason of the thing, it seems that a motion for a new trial need only present such grounds therefor as arise or are ascertained subsequent to the trial, which the party had no opportunity to or could not raise during the trial. Every point relied upon as error here must have been called to the attention of the trial court in some manner and at the proper season; but, when once so presented, that is sufficient without a repetition. While the motion for a new trial would not necessarily indicate or control the points appellant might desire to present upon an appeal, and would be of little value in this particular as an aid in settling a statement, yet the proposed statement itself should furnish this information; it should contain every point made touching or depending upon the evidence. While it may be true that some question of fact might become matter of record during the pendency of the case before its final decision in the superior court, nevertheless such matter should be incorporated in the statement, if one is subsequently settled on appeal. It is not contemplated that the facts of the same case should in part be presented by bill of exceptions and partly by a statement of facts, although there is now practically little or no difference between them, except in the manner of the settlement. While the language of § 4, wherein it provides that "any party feeling himself aggrieved may have any material fact or facts not already a part of the record made so by a statement of facts," would indicate that it would not be necessary to include such facts of record in the statement, but that they might come up in the nature of a

bill of exceptions and the other facts by the statement, yet, if so, this must yield in this particular to § 6, which is as follows:

"Sec. 6.    In actions at law and in special proceedings which are appealable, the appellant, instead of settling a statement of facts, as provided by this act, may have his exceptions and such facts as are material to the same made a part of the record by bill of exceptions, as provided by chapter nineteen (19) of the Code of Washington, relating to 'exceptions.'"

While either course may be adopted, it is evident by this section that, whichever one is adopted, it must be followed exclusively, although an exception taken as provided by chapter 19 of the code would not prevent the party having taken it from afterwards settling a statement of facts and making such exception a part thereof.    The proposed statement should fairly advise a respondent of every question to be urged as error upon an appeal that is in any wise dependent upon the evidence; and in this way he is put upon his guard in the settlement thereof, and should make his objections and offer his amendments and additions accordingly; and the certificate that such statement contained all the material facts would be understood as applied to and limited to the questions presented by the statement, and none other dependent upon the facts would be considered.

A party offering a statement is in duty bound to fairly present the facts bearing upon the points raised, and if, through any mistake or inadvertence, any fact material to any of such points should be omitted, he would in good faith be bound to insert it when called to his attention. Should a difference of opinion occur as to what the facts were, or as to what was material, this would be settled by the judge.    A proposed statement might be so palpably defective as to show a willful or wanton violation of the law, and possibly amount to a contempt of court.    In such

cases the judge might refuse to settle it. An appellant should not be permitted to file a mere excuse for a statement, and impose the burden of furnishing the material facts upon the opposite party. If there had been a *bona fide* attempt to present some of the points fairly it might be settled as to such points, and where it was evident that no attempt had been made to comply with the law as to any other points, these might be ignored, in which case the certificate should show that the statement contained all the facts material to certain points, indicating them, and that the facts with regard to the other points were not sent up because no attempt had been made to supply them. But it is only in extreme cases, where an intentional failure to comply with the law is evident, or where there has been the grossest neglect, that either of these courses should be resorted to. In this case the motion to strike the statement settled should be denied. The original statement proposed, which was filed in time, while it did not contain nearly all the testimony, was sufficient, or substantially so, to present the points, or most of them at least, there raised. Quite likely, however, it should have contained additional testimony as to some of these points, but of no considerable amount. The proposed statement was not so faulty as to indicate gross neglect, or an intention to mislead the court or respondent, or to show an attempt to suppress some of the material facts. The respondent had an opportunity to offer this additional matter, and to have the same incorporated in the statement, with the consent of the appellant or by the direction of the court, if deemed material, in case of a disagreement between the parties. Instead of pursuing this course, the respondent procured what was claimed to be a full and complete statement of all the testimony and facts, which was a much more voluminous document than the original statement proposed by the appellant. It contains much that is cumulative and immaterial to any of

the question raised. Such statement was not procured by the respondent to be offered as a substitute, it seems, for the first statement proposed, but rather to show the defects therein, and to resist the settlement of any statement by reason thereof and of the lapse of time. The court settled the facts in accordance with the last statement, however, and made the points raised over the settlement a part thereof for our decision. The proposed statement was not sufficient to raise all the points which are presented by the statement settled, but it was the appellant's option, of course, which points he would urge upon appeal of those raised below. The respondent contends that, had the first statement been adopted, the appellant might have successfully urged that the evidence was not sufficient to sustain the verdict, as no evidence upon some of the essential points was incorporated therein, and that for such reason also all the facts should come up; but such a question could not be raised in this court originally, and it does not appear to have been raised in the superior court, either by a motion to quash, or by a request for an instruction for a verdict upon any such ground. Had the question been raised in the superior court, if the controversy was over the effect of certain testimony or proof (and this might include all of it), as to whether it did tend to prove such fact or facts, then such testimony or evidence should be set forth in the statement, together with the point raised thereon. If all the proof was not contained therein the respondent could propose any additional matter which he should claim was material, but it would not always be necessary to incorporate all the testimony and proof in the statement—that which should be cumulative and that which would be immaterial—merely to show an absence of such proof. Of course, the statement might better be full than meager, but it is not a correct practice to burden the record with cumu-

lative and clearly immaterial matters tending in a greater or less degree to inconvenience the hearing here.

The point was raised by a motion to set aside the verdict and for a new trial, that the damages allowed were excessive; that the evidence was not sufficient to warrant so large a recovery; and this was sought to be preserved in the first statement, but what has been said with regard to the testimony and proof to be sent up applies to this point also. Only material matters should be sent up, and as to these the statement should not be cumulative, as the court does not weigh the proof in actions at law. The respondent would be advised of any claim, either that the damages were excessive or that there was no testimony to prove some point claimed to be necessary to support a recovery, by the proposed statement itself. The motion for a new trial should be incorporated in such statement, and there would be the information as to any point over the excessiveness of the damages, or of any other point properly raised therein and not elsewhere appearing. If the point as to the failure of proof was raised by a motion, that should be set forth in the statement, and the instructions given or refused, if any point is claimed over them, should also be set forth in the statement; and if such point was raised thereby it would likewise appear, and the respondent would be informed thereof, even though the statement proposed should contain no other direct allegation that the damages were excessive, or that there had been a failure to prove some necessary point, each of which, however, would be very proper allegations to make directly in the proposed statement where relied upon as error, and all the proof is not given.

The motion is denied.

### ON THE MERITS.

This action was brought by respondent against appellants, to recover damages for a criminal prosecution which

he alleges was malicious. It appears by copies of an affidavit and warrant of arrest contained in the record that the respondent was first arrested for an assault upon appellant Hanson with intent to murder him, the charge being that, at Maple Valley, in King county, on the 23d day of November, 1889, the said John E. Jones did then and there shoot at the said Hanson with a pistol, intending to kill and murder him, and that he did shoot him in the leg. The arrest was made upon a warrant issued by one John F. Miller, a justice of the peace of said county, before whom Hanson made complaint. An examination was held, and the respondent was bound over. The record shows, however, that the nature of the charge was subsequently changed, and that the respondent was indicted by the grand jury of King county for an assault upon Hanson with a deadly weapon, with intent to inflict upon him a bodily injury, etc., and that he was tried thereon in the superior court of said county on the 14th day of February, 1890, which trial resulted in an acquittal, the jury finding a verdict of not guilty upon the evidence.

The circumstances connected with the affair are something as follows: The respondent Jones filed upon a piece of government land in April, 1889, which adjoined land owned by the appellant Jenkins. There was testimony to show that Jenkins was very desirous of obtaining title to this land himself, and that he procured the appellant Hanson to file upon it in July of said year, with an understanding that it was to be for his (Jenkins') benefit; the intention of said parties being to either frighten Jones off the land or to defeat his filing by contest, and a contest was subsequently instituted. Jones and Hanson each had built cabins upon the land, and each one was undertaking to hold possession of it. Hanson's cabin was torn down by some one, and, according to Jones' testimony, Hanson came to his (Jones') cabin upon the day the shooting occurred, where

Jones was at work, and asked him who tore down his house; that Jones said he did not know, and that after some altercation Hanson, who had a revolver with him, ordered Jones to leave the premises; that Jones started to leave, and that Hanson then went over towards Jenkins' place. After they had got some distance apart, Jones testified, he heard a shot fired. He also claimed that Hanson was quite drunk at the time, and that no one else was present or within seeing distance; that the revolver Hanson had belonged to Jenkins, and that he (Jones) had no revolver or gun of any kind. Hanson was shot through the calf of the leg. The inference drawn from this testimony was that Hanson had shot himself, accidentally or otherwise, and it was claimed that thereupon Hanson and Jenkins conspired to charge Jones with a felonious assault as aforesaid, thereby undertaking to get him imprisoned in the penitentiary. There was testimony to show that upon several occasions prior to this shooting Jenkins had said that if Jones did not vacate the land in controversy he would have him sent to the penitentiary, or that he would try to get up a charge against him for that purpose. Hanson's testimony in part was, that at the time the shooting occurred he had gone over to Jones' cabin, where Jones was at work on the roof, to ask him who tore down his cabin; that Jones pulled a revolver, and as he (Hanson) turned to run, Jones shot him. Jenkins testified about the shooting, in substance, that he and Hanson had returned to his (Jenkins') place from Seattle, just prior to its occurrence; that he went about preparing something to eat, while Hanson went to look at his torn-down cabin; that when he had gotten the meal ready he went and called to Hanson to come, but did not get any answer; that, hearing some talking, he went over towards Jones' place; that he went up to within one hundred and fifty feet of them, and saw them both plainly, and that he there saw Jones shoot Hanson through the leg after having

told him to go out of there, and after Hanson had turned
to go.    There was testimony that Hanson had said that
Jenkins was not present, and did not see them.    Hanson
and Jenkins were the only witnesses who testified for the
prosecution before the justice of the peace.    It was not
claimed by the prosecution that any other than the three—
Jones, Jenkins and Hanson—was present or witnessed the
shooting, or that any one else knew anything very material
in relation thereto.    It was shown that Jenkins and Han-
son were witnesses before the grand jury, and that both
of them testified to the charge against Jones at his trial
in the superior court, and gave the only direct testimony
against him at said trial.

The first point made by appellants goes to the suffi-
ciency of the complaint, to which they had jointly inter-
posed a demurrer upon the grounds that it charged more
than one ground of action, not separately stated, and that
it stated no facts sufficient to constitute a cause of action
against the defendants or either of them.    Appellants'
brief and argument thereon, however, were limited to
the proposition that the complaint did not state a cause
of action against Jenkins.    It was contended that the
complaint should allege malice upon the part of said de-
fendant, that there was no probable cause for the prose-
cution, and furthermore that the charge was in fact false.
It was argued that it made no difference how maliciously
said defendant acted in the premises if there was probable
cause for the charge and prosecution, and that it did not
matter whether they had, or whether there was probable
cause within their knowledge or not, if the respondent
had in fact committed the crime.    It was urged that
the complaint failed to show that Jenkins took any act-
ive part in the proceeding, or that he did anything be-
yond what he was required to do in obedience to process
as a witness.    But these points, if raised, under the circum-
stances, are not well taken.    The first paragraph of the

complaint alleges " that on the 23d day of November, 1889,
the defendants procured the arrest of the plaintiff on a false
charge of assault with a deadly weapon upon the person of
defendant Michael C. Hanson, on the 23d day of Novem-
ber, 1889, in the county of King and State of Washing-
ton; " and the eighth paragraph alleges " that in procuring
the arrest and prosecution of the plaintiff the defendants
acted maliciously and without probable cause." The re-
sponsibility for the prosecution is charged upon Jenkins
equally with Hanson in these allegations, and this is not
affected by the other allegations in the complaint, showing
that only Hanson swore to the complaint to obtain the
warrant; and it is alleged in the part of the complaint
stated that the charge was false, and that the defendants
acted maliciously and without probable cause.

It was further insisted that the action of the justice of
the peace in binding the plaintiff over, and his indict-
ment by the grand jury, of themselves showed probable
cause for instituting the proceedings, and authorities are
cited which appellants claim support this position; but
whatever force there is in the proposition as a general one,
there is none in a case like this, where the whole proceed-
ings were founded upon the acts and testimony of the de-
fendants, which were alleged to have been malicious and
false; and this was the very issue tried. Certainly the
defendants should not be allowed to avoid responsibility
upon such grounds if the very proceedings set up in de-
fense were based and founded upon their own perjured
testimony, and it could have been nothing less under the
circumstances of this case; if it was untrue, there was no
possibility for any mistake therein.

Error is claimed upon the admission in evidence of the
affidavit and warrant issued by the justice of the peace, and
of the bond taken before him; also of the record of the pro-
ceedings had in the superior court in the prosecution of

Jones, on the ground that they were not properly identified; but, owing to some inadvertence, none of these documents were sent up with the record, there being only the copy of the affidavit and warrant of arrest heretofore mentioned therein, and consequently no point over them is raised.

It is contended that the court erred in certain instructions given to the jury, and in refusing to give an instruction asked for by appellants. One of the instructions given which is complained of is as follows:

"If you believe from the evidence that the defendant Hanson was shot by the plaintiff in the manner as claimed by him, and that Hanson and defendant Jenkins saw such shooting, were present and witnessed it; in other words, if you believe their testimony as given before you, you will find that they had probable cause for commencing such prosecution, and your verdict should be for the defendants. On the other hand, if you find that the defendant Hanson was not assaulted and shot by the plaintiff at all, and that the testimony of Jenkins and Hanson is false as to the fact of shooting—that they both came into court and willfully testified falsely to the shooting—you may find that such prosecution was commenced without probable cause, and may find that the same was malicious."

This instruction is objected to on the ground that an action for malicious prosecution requires express proof of malice and absence of probable cause, and we are cited to the case of *Maloney v. Doane*, 15 La. 278; 35 Am. Dec. 204. That case was an action for damages for malicious prosecution in having charged the plaintiff with enticing away and harboring a slave belonging to the defendant. In the action for damages the defendant offered to prove by two witnesses that they had stated to him before he instituted the prosecution against the plaintiff that a certain anonymous letter was in their opinion in the handwriting of the plaintiff. It appears by the reporter's statement that this letter charged the defendant with maltreating a certain female slave, and stated that the

slave had friends who would protect her, and that she
was at that time beyond the reach of the defendant, and
the court very properly held that this testimony should
have been admitted.   It went directly to the question of
probable cause and the motives of the prosecutor, but the
facts there are not at all similar to the facts in this case.
There was no offer here of any testimony to show proba-
ble cause outside of the testimony of the appellants, which
was admitted; and the court very properly told the jury
that, if they found this testimony was willfully false, they
might from this find that there was no probable cause to
warrant or excuse the prosecution, and that the same was
malicious.   In fact it would be hard to get stronger or
more direct proof of these matters than evidence of this
character.

Another instruction objected to is as follows:

" If, from the evidence and the instructions I have given
you, you find that the plaintiff is entitled to recover, in es-
timating the amount of his damage you have the right to
take into consideration and allow to him such reasonable
sum as the evidence may show he was compelled to pay
in defending himself against said charge, and such rea-
sonable sum as the evidence may show to be a just compen-
sation for the time necessarily lost in attending upon said
trial, and such further sum as will compensate him for
injured credit, peace of mind and mental suffering."

The controversy here arises over the meaning which
should be given to the word " credit."   The appellants
urge that the jury would naturally understand it as re-
lating to the financial standing of the plaintiff, that being
the sense in which the word ordinarily is used; and
that it was error, as there was no proof that the plaintiff
had any credit or that he had sustained any injury
therein; and that the instruction was erroneous as not
predicated on the testimony in this particular.   But
the very fact that no issue had been made thereon
and that it was not· claimed the financial standing
of the plaintiff had been injured, or any testimony

offered in regard to it, would of itself indicate that the word was used here as relating to the reputation of the plaintiff and the esteem in which he was held by the community; and the use of the word in this sense, while possibly not so common as in the other, is certainly not exceptional, and the connection in which it was used in this instance, with the surrounding circumstances, rendered its meaning obvious, and the jury could not have been misled thereby.

The request to charge which was refused is as follows:

"In order to find for the defendants, or either of them, it is not necessary that it be shown by the defendants to you that the plaintiff did assault Hanson to such an absolute certainty as would be required for you in order to convict the plaintiff of the charge; even though if upon the evidence you should not feel justified as jurors in finding a verdict of guilty against the plaintiff, still this of itself would not be sufficient to justify you in finding a verdict in favor of the plaintiff. Either defendant would be entitled to a verdict in his favor, if the evidence taken altogether should show that he had probable cause for doing whatever he did in the premises."

This request was fully covered in the instructions given to the jury. The jury were told that the plaintiff must make out his case by a preponderance of the evidence, and in order to find a verdict in his favor they must find that the appellants came into court and willfully testified falsely as to the shooting ; and that in no case could a verdict be found against Jenkins unless the jury were satisfied by a preponderance of the proof that he acted in conspiracy with Hanson, and so acted without probable cause.

The jury returned a verdict in favor of the plaintiff for $3,000, and the appellants moved to have the same set aside as excessive. The motion was denied, and error is claimed thereon. If the plaintiff was entitled to recover anything, the amount recovered is not excessive. Two

juries found against the testimony of the appellants; and in this action, in order to find for the plaintiff under the evidence and instructions, they had to find that the appellants willfully testified falsely, in relation to the charge against the plaintiff, and for the purposes of this case that fact is settled, whatever the real truth of the matter may be. The charge brought against the plaintiff was a most grievous one, and the consequences, in case of conviction, were likely to be serious indeed. The very fact that Hanson had been wounded in some manner lent an air of plausibility to the charge. Such a prosecution would be a very great damage to an innocent man in more ways than one, outside of the actual expense put upon him in defending the same, and the loss of time involved.

Judgment affirmed.

ANDERS, C. J., and DUNBAR and STILES, JJ., concur.

HOYT, J., dissents.