[No. 1177. Decided May 26, 1894.]

# F. C. TINGLEY, *Respondent*, v. FAIRHAVEN LAND COMPANY, *Appellant*.

REVIEW ON APPEAL — CONTRACTS — ALTERATION — PLEADING — EVIDENCE — INSTRUCTIONS.

The insufficiency of the evidence to sustain the verdict, where there was no motion for a new trial upon that ground, cannot be raised upon an appeal from an order denying defendant's motion for judgment upon answers to special issues submitted to the jury, as, upon such motion, the pleadings together with the findings returned by the jury as the facts of the case are all that the court is called upon to consider.

A written contract for the sale of logs, providing for their delivery at the purchaser's mill, may be modified by a subsequent parol agreement whereby the purchaser waives delivery at the mill and accepts possession of the logs as afloat in a certain river and in certain booms therein, without requiring any consideration for the new agreement, and without violating the statute of frauds.

Where the complaint in an action for the price of logs alleges that defendant took possession of them, the complaint is sufficient although other allegations may show that the plaintiff was not in the actual possession of the logs at the time of sale.

A witness cannot fortify his testimony by reference to memoranda when the entries were not made at the time as the result of matters wholly within his own knowledge, but were derived from the reports of servants.

Where, in an action for the price of logs, defendant has put in evidence the sworn complaint of the same plaintiff in another action, claiming damages from a boom company for the loss of the same logs, it is error for the court to refuse to charge the jury as to the legal effect of the complaint as an exhibit.

*Appeal from Superior Court, Whatcom County.*

*Kerr & McCord*, for appellant.

*Black & Leaming*, for respondent.

The opinion of the court was delivered by

STILES, J.—After the jury had brought in a verdict for the plaintiff, and answered certain special issues submitted

at the request of the defendant, both sides moved for judgment — plaintiff upon the general verdict, and defendant upon the answers to the special issues.  The court denied the defendant's motion, and granted that of plaintiff.  Upon that judgment was entered, and defendant appeals.  The respondent now objects to this court's consideration of the case upon the ground of the insufficiency of the evidence, for the reason that there was no motion for a new trial made.  This court, in *Jones v. Jenkins*, 3 Wash. 17 (27 Pac. 1022), impelled by the condition of our statute upon the subject of new trials and appeals, held that where a matter had been once presented to the court in the course of the trial for its decision, and the court had ruled upon it, there was no occasion for presenting it a second time in the form of a motion for a new trial before the right to have the ruling reviewed by this court could accrue.  But we did not undertake to say that a final judgment of the court below should be set aside, and the cause remanded upon a ground which had never been presented to the trial court for its consideration in any form.  The errors, objections and exceptions considered in *Jones v. Jenkins* were those which occurred during the course of the trial between the time when the jury was called and the time when it was discharged; but a motion that the court set aside the verdict of a jury on the ground that the evidence is insufficient is not based upon errors of this kind.  It is by such motion that the court, for the first time, has its attention directed to the evidence, and it passes upon its sufficiency as a matter of law, and until it is moved and its attention challenged to the alleged weakness of the evidence there can be no ground to say that the court has erred in proceeding to judgment, notwithstanding the evidence may be insufficient.

Now in this case the plaintiff moved for judgment in the ordinary way, but the defendant challenged the general

verdict, urging that the special findings required the court as a matter of law to render judgment in its favor, thereby accepting the findings returned by the jury as the facts of the case upon the evidence admitted; and upon this motion the pleadings and findings themselves were all that the court was called upon to consider. A motion for a new trial upon the ground of the insufficiency of the evidence to justify the general verdict would not have been inconsistent with the motion made. Elliott, App. Proc., §§ 834–847. And, no such motion being made, we think the facts found by the jury should be taken as justified by the evidence. But, under the rule laid down in *Jones v. Jenkins*, we can still examine into the errors of law alleged to have occurred at the trial, including the motion for a non-suit.

The plaintiff sought to recover on certain contracts for the sale of logs. In the spring of 1890 he made a contract with defendant to deliver at its mill in Bellingham Bay one million feet of first class logs at $6 per thousand feet. One thousand dollars was advanced by the purchaser, and it was agreed that the balance of the price should be paid as the logs were delivered. It was also agreed that the defendant would buy all the logs that the plaintiff might put into the Nooksack river during the continuance of the contract, which was terminable at the will of either party, and pay therefor the sum of $6.50 per thousand feet, the plaintiff to deliver in the same manner. A further stipulation was to the effect that the plaintiff's logs were or would be marked with certain brands, and that these brands should be registered and should be the property of the defendant during the continuance of the contract. It was also agreed that the ownership of the logs described in the contract passed forthwith to the defendant, and that, in case the plaintiff should delay in the delivery of the logs at the mill, the defendant might take the matter of de

livery into its own hands at the proper and reasonable cost
of the plaintiff.

It will be observed that this contract contemplated no
payment excepting the thousand dollars mentioned until
the actual delivery of logs at the mill.    During the sum-
mer of 1890 some seven hundred thousand feet of logs
were delivered; but on September 3d a new contract was
made without anything being said between the parties as
to the termination of the first one.    By this second con-
tract the plaintiff assumed that he had afloat in the Nook-
sack river logs with the same marks as those mentioned in
the first contract, ''to the amount of say fifteen hundred
thousand feet, more or less,'' and the body of the agree-
ment was as follows:

''That the party of the first part [the defendant] agrees
to buy, and said F. C. Tingley agrees to sell, said logs and
assign and transfer the marks thereon to the party of the
first part, who shall own and control the same during the
pendency of this contract, for the price or sum of six and
$\frac{50}{100}$ dollars per thousand feet board measure, straight and
sound scale, for No. 1 logs, delivered at the mill of the
party of the first part.    Said Mundy, Gen. Man., agrees
to pay or advance to said F. C. Tingley the price or sum
of two and fifty one-hundredths dollars per thousand feet
B. M., upon such logs, say fifteen hundred thousand feet,
now in the river, and the balance of such agreed price upon
receipt of the said logs.    Said Mundy further agrees to
further advance from time to time upon such logs as F. C.
Tingley may put in, the sum of two and fifty one-hun-
dredths dollars per thousand feet during the pendency of
this contract, which shall continue in force during the
pleasure of the parties hereto.''

The complaint set out the two contracts in full, and al-
leged that the plaintiff had put into the Nooksack river
logs subject to the contracts to the amount of seven million
feet, one million of which he claimed to be paid for at the
rate of six dollars per thousand feet, and for the remainder

the sum of six dollars and a half, save and excepting one
million five hundred thousand feet which defendant claimed
to be missing, but which were to be paid for at the larger
rate if the same were found not to be missing, but to be in
the river or the booms at the mouth thereof. The fur-
ther allegation is made that the actual amount missing did
not exceed one million feet. The contract was also alleged
to be still in force. It is next alleged that on or about
November 20, 1890, the undelivered portion of plaintiff's
logs were lying in the Nooksack river and in certain booms
at the mouth of the river, but that there was difficulty in his
delivering the logs to defendant's mill because of the fact
that two rival boom companies were in litigation as to
which of them had right to boomage charges, pending
which disagreement and delay in delivery the complaint
alleges as follows:

"Defendant . . . sent for this plaintiff, and with
this plaintiff then and there agreed to waive, and did waive,
that portion of the agreement first above referred to and
set out between this plaintiff and the defendant relating to
the delivery at said mill of said defendant of the logs so as
aforesaid sold by plaintiff to the said defendant, and agreed
to then and there accept, receive and take possession of
all of said logs both in the boom and in the said Nooksack
river, and to have the same boomed out and delivered at
their said mill at their own expense, this plaintiff to allow
the said defendant for its services and charges for so boom-
ing and delivering the said logs at said mill, the sum of
seventy-five cents per thousand feet, board measure, which
said seventy-five cents per thousand feet, board measure,
was then and there agreed to be deducted from said pur-
chase price of six dollars and fifty cents per thousand feet,
board measure; and the defendant did then and there by
said waiver prevent the plaintiff from fulfilling his said
original contract; that in accordance with the terms of the
last mentioned waiver the said defendant took possession,
and accepted as full delivery all of the remaining part of
the said six million feet of logs, board measure, not thereto-

fore delivered at said mill, and that the said delivery was then and there accepted by the said defendant as a delivery at their mill, and in full compliance with the terms of said agreement by the plaintiff; and the parties did partially perform said agreement as modified.''

Plaintiff claimed the sum of thirty-nine thousand dollars, less the sum of seventy-five cents per thousand feet, board measure, on six million feet, and the sum of nine thousand five hundred dollars theretofore paid by defendant, making a net claim of twenty-five thousand dollars.

Defendant demurred to this complaint upon the ground that it did not state facts sufficient to constitute a cause of action.    The points of the demurrer were, in substance, that there was an attempt to incorporate new and inconsistent terms into the written contract by a parol agreement; that no valid tender of the logs was alleged; that there was no showing of possession in the plaintiff; that there was no showing of the passage of any consideration for the new agreement; that the waiver was within the statute of frauds, and that it did not appear that the logs had been scaled as required by Gen Stat., § 2351.

We think the allegations of the complaint must be determined as sufficient.    Notwithstanding the previous agreements in writing, it was competent for the parties thereto to agree to such a disposition of the logs as is alleged to have been made, and this they could do by parol notwithstanding the statute of frauds, and without the actual payment of any consideration, and this new agreement plaintiff could enforce if it was true, as was alleged, that the defendant took possession of the logs, and thereby took it out of the power of the plaintiff to do the only thing which under the contracts it remained for him to do, viz., to actually deliver the logs at the mill.    The transaction as alleged in the complaint constituted, as we view it, substantially an abrogation of the contract, so far as

the logs at that time in the river and the booms were concerned; and these were the only logs which were covered by the alleged waiver and which are sued for in this action. It was as if, without any previous negotiations or contract, the plaintiff, being the owner of certain logs scattered along the Nooksack river, had said to the defendant, "I will sell you my logs at six dollars and a half per thousand feet, less seventy-five cents per thousand feet for boomage," and the defendant had replied, "I will take them," and had taken possession of them. As between the parties to the transaction it was not necessary that the possession be taken immediately. Possession taken at any time after the sale under this arrangement would have entitled the owner to the purchase money. There are allegations in the complaint which would make it appear that in fact the plaintiff did not at that time himself have possession of a very large portion of his logs, which were in booms, and were being withheld by boom companies until their fees were paid, but it also shows that negotiations were pending for the release, and that all that was necessary was the payment of the boomage to release them, and leave them free for delivery by the plaintiff or to be taken possession of by the defendant. The allegation is that defendant took possession, and although the complaint is silent as to the manner in which the logs were released from the claim of the boom companies, and taken possession of, the positive allegation that possession was taken is not for that reason to be considered nullified, although it may turn out to be untrue. So far as the complaint is concerned, it shows a completed sale at the definite price of $6 for one million feet and $6.50 for the balance, and it only remained for the parties in some manner to arrive at the actual amount of the logs to entitle the plaintiff to the payment of his money.

The plaintiff's case disclosed facts which we think would

have warranted the jury in finding the sale of the logs in the river, as alleged in the complaint. The points wherein the plaintiff entirely failed to support his claim as laid were, first, the amount of the logs, and, second, the amount of money which he had been paid by the defendant. By his own testimony he asserted that he had put into the river logs subject to the terms of the two written agreements to the amount of 7,776,227 feet, but by the cross examination this total had been so reduced that the probability was that the jury would find a much less quantity, and the special findings and the general verdict confirm this expectation. It also appeared by plaintiff's own evidence that he had been paid a much larger sum than the complaint admitted, viz., as the jury found, $24,581.99. But as against the motion for a non-suit there was, perhaps, something shown to be due, and the motion was therefore properly denied.

But in taking the evidence, the court made an error against the appellant. Logs put in the river by respondent were definitely accounted for as follows:

| | |
|---|---|
| Delivered at appellant's mill, per scale.. | 3,124,136 feet. |
| Still in river, as per scale | 1,203,963 " |
| Lost, by respondent's admission | 400,000 " |
| Sold to Pence & Gest | 144,000 " |
| Total | 4,872,099 feet. |

But of those still in the river 587,802 feet were put in after the date of the alleged waiver, and were therefore not covered by this action; so that the total amount of logs for which the appellant was shown to be definitely liable in this suit was the sum of the first two of the above items, less the logs put in after the waiver, viz., 3,740,297 feet, which, at $6.00 for the first million and $6.50 for the remainder, amounted to but $23,811.93, which was $770.06 less than respondent had been paid. To overcome this result and establish a larger quantity as having

been in the water and subject to the waiver, respondent had no proof except his own testimony, and, as a witness, he was unable to state anything unaided by memoranda which he claimed contained a daily scale of the logs he had put into the river from October, 1889, to December, 1890, inclusive. From a book he was able to show that the total scale from October to August was 5,476,227 feet, and from other memoranda, which were lost at the time of the trial, he gave 2,300,000 as the number of feet put in from August to December. Neither the book nor the memoranda were the result of his own scaling alone. When he was present at the camp he did more or less of the scaling, but when he was absent, and sometimes when he was present, certain of his employés would do the scaling, putting down the result on boards or pieces of paper, and turning these in to him. From these employés' notes and his own scaling he made up his book and other memoranda. The court at first sustained an objection to his use of the book, but finally let him read from it, and therefore, to all intents, put it in evidence, as he had no recollection aside from its contents and the fact that he made the entries in the manner stated. We have no hesitation in saying that the testimony derived from this book was incompetent, under well known rules of evidence, because the entries contained in it did not pertain to matters wholly within the knowledge of the witness, who could not identify any entry in it except that for the first day as the result of his own scaling.

At this point in order we should consider the exceptions to the charge. Certain of the instructions were directed to the point of consideration for the waiver of delivery alleged; but whether there was error in these or not, seems to us, as the case is presented upon the pleadings, immaterial. The complaint alleged a sale accompanied by possession, that is, an executed sale, and if the proofs bear out the allegation, no other consideration was necessary. The

statute of frauds requires the payment of earnest money or an agreement in writing only when some part of the goods are not accepted. But in the case before us there is no question but that more than two million feet of the plaintiff's logs were taken and used by defendant, whose real claim is, that they were so taken purely under and in accordance with the terms of the second written contract, which called for payment in full for those logs only which had been received at the mill, and not under any ''waiver'' or new contract of absolute sale. There was an opportunity here for the defendant to claim a charge that the new agreement must be made out by clear and convincing proof, but under the facts, consideration had nothing to do with the case.

So with the matter of tender and ability to tender discussed at length in the briefs. What difference could it make whether plaintiff tendered his logs or not, if in fact defendant took possession of part of them under an absolute agreement to pay for all?

Another portion of the charge referred to defendant's claim that Mundy, its manager, if he had made the waiver as alleged, did so in violation of his duty to defendant, with the plaintiff's knowledge, inasmuch as the waiver, if made, was not made for defendant's benefit, but for the sole benefit of another corporation, the Bellingham Bay Boom Company, of which he was also manager, and which was deeply interested in the litigation over boomage, etc. Under an instruction which was equally as good as that proposed by defendant the jury found that Mundy's action was not for the benefit of the boom company alone, and therefore appellant has no cause of complaint in this connection.

But in respect to one of the requests refused, we think there was material error. Defendant put in evidence a complaint sworn to by plaintiff, in an action commenced by him in February, 1891, against the Bellingham Bay Boom Company, the gist of which was a claim by him that

by reason of that defendant's failure to carry out its agreement made with him in August, 1890, to drive, boom, sort, raft and deliver his logs at the mill, a large quantity of his logs in the Nooksack river had been suffered to go to sea and become lost. Seven million feet of logs were thus alleged to have been placed in the river for driving by December 1, 1890. It was alleged that plaintiff had a contract with the Bellingham Bay Mill Company for all of his logs in the river and those which he should produce within two years from the date of the contract at $6.50 per thousand feet delivered, and that the boom company's contract covered the delivery of those logs at the mill; that the existence of this contract was known to Mundy, who was the manager of both companies; and that by reason of the failure of the boom company to perform its contract plaintiff had been unable to deliver any logs whatever to the mill company, to his great loss and damage. The action in which this complaint had been filed was tried and resulted in a non-suit, appeal to this court and reversal ( *Tingley v. Bellingham Bay Boom Company*, 5 Wash. 644, 32 Pac. 737), and was undisposed of at the time of the trial of the case at bar; and appellant asked the court in this case to charge the jury as to the legal effect of the complaint as an exhibit, and to instruct that it might be considered with the other evidence concerning the alleged waiver and the delivery of the logs, and with the plaintiff's explanations of it, in determining whether the waiver and delivery did, in fact, occur as plaintiff asserted.

We think an instruction of this kind was highly important, and ought to have been given. The duty of declaring the legal effect of the complaint was incumbent upon the court to the same extent that it was its duty to construe the two contracts which were the basis of the action; and if the jury found that the two suits referred to the same logs there could be no doubt that the plaintiff had

asserted under oath in the former one that large quantities of the logs were his own property at a time long after that at which he now says he had parted with both title and possession of them to the appellant, and that he was claiming damages in the shape of profits on logs, in the first case, which he here asserts he was to be fully paid for under his absolute contract of sale made November 20, 1890.   It was the theory of the defense that there never had been any waiver or any delivery or taking possession of logs other than as provided in the contract of September 3, 1890, and that it was liable only for logs actually delivered; whereas plaintiff was seeking to charge it with upwards of three million feet of logs confessedly never delivered, but drifted out to sea and lost; and this sharp conflict on the most material points in the case called for explicit instructions on all the matters connected therewith, when such instructions were requested.

The consideration of other questions raised upon the appeal is unnecessary since there must be a new trial.

Judgment reversed and new trial ordered.   The clerk will not allow appellant the expense of seventy-five pages of its briefs which contain testimony merely.

ANDERS and HOYT, JJ., concur.

DUNBAR, C. J. (*dissenting*).—Believing that there was no substantial error committed by the court, and that there was sufficient competent testimony to sustain the verdict, I am compelled to dissent.

SCOTT, J.—I also dissent.