[No. 5407.    Decided March 23, 1905.]

JOHN WEBER *et al., Respondents,* v. SNOHOMISH SHINGLE Co., *Appellant.*[1]

APPEAL AND ERROR—REVIEW—VERDICT ON CONFLICTING EVIDENCE. Where an issue as to the terms of a contract virtually becomes one of veracity between witnesses, and upon which reasonable men might differ, the conflict in the evidence being substantial, the verdict of a jury will not be disturbed on appeal.

APPEAL AND ERROR—EXCEPTIONS TO INSTRUCTIONS—WHEN TO BE TAKEN.    Exceptions to instructions must be taken before the jury returns the verdict, and a stipulation that they might be taken at any time before the filing of a proposed statement of facts is unavailing to secure the review of exceptions taken long after judgment and without ever being called to the attention of the trial court.

CONTRACTS—BREACH—DAMAGES—EVIDENCE—FAILURE OF PROOF. In an action for damages for the breach of a contract whereby

[1] Reported in 79 Pac. 1126.

plaintiff was to deliver the timber upon a certain tract of land, there is a total failure of proof where the evidence was meager and uncertain, and insufficient to show the amount of timber left on the land, its value, or the cost of cutting it.

Appeal from a judgment of the superior court for Snohomish county, Denney, J., entered March 8, 1904, upon the verdict of a jury rendered in favor of the plaintiffs for $740.42 damages for breach of contract. Affirmed except as to $150.

*Hathaway & Alston,* for appellant.

*Cooley & Horan, G. D. Eveland, F. D. Lewis,* and *E. C. Dailey,* for respondents.

ROOT, J.—This is an action brought by respondents against appellant upon two alleged causes of action, one to recover $150.00 as damages claimed to have resulted from the breach of a contract wherein and whereby respondents were to deliver, in the river near Novelty, the timber upon a certain tract of land described in the complaint; and the other to recover $682.40 claimed to be a balance due on account of timber furnished under said alleged contract. The case was tried to the court and a jury, and resulted in a verdict in the sum of $740.42, in favor of respondents. A garnishment proceeding intervened, and judgment was entered in favor of these respondents in the sum of $712.37. From this judgment appeal is taken.

Respondents claim that appellant agreed to buy all of the timber referred to, and pay $8.00 per thousand feet therefor, to furnish boom chains, and to advance money 'with which to do the logging, and to receive the logs in the river at Novelty. Appellant contends that it agreed to purchase from respondents whatever first class cedar shingle logs it might need, at the market price of said logs, to be delivered at its mill at Snohomish; that it advanced

37-37 WASH.

certain money to respondents, paid certain items of indebtedness held by lien claimants against the logs cut by respondents, and incurred other expenses relative thereto; that the logs furnished by respondents were of a very inferior quality, and much less in quantity than claimed by respondents; and that it had more than paid respondents all that they were entitled to. It is undisputed that appellant ceased to furnish respondents money before all the timber was removed from the land, and that respondents were obliged to quit logging on that account.

Appellant assigns two errors only; first, the overruling of appellant's motion for a new trial; second, error in one of the instructions to the jury. The first assignment presents only the question of the sufficiency of the evidence to sustain the verdict; it being contended by appellant that the respondents did not establish the terms of the contract they alleged by a fair preponderance of the evidence, and also that the contract, as alleged and proven by respondents, is indefinite and uncertain. It is conceded that there were some verbal negotiations between these parties for the purchase of timber. It is admitted that appellant agreed to, and did, furnish boom chains, and did advance to respondents money on two different occasions, besides paying off certain lien claims. Upon the question of the amount to be paid per thousand, and as to the question of the quality and quantity of timber to be furnished, and the place of its delivery, there was an irreconcilable conflict in the testimony. Mr. Weber, one of the respondents, testified in regard to these matters, among other things, as follows:

"I asked Mr. Ames [one of the officers of the appellant company] what he would pay for shingle logs; I told him I thought I had 300,000. Previous to that time, I think before the 12th, I had been up there twice to see the timber, and while it wasn't first class timber, still it was good shingle timber; . . . . . . I asked him if he

would pay me $8.00 for that timber and furnish the boom chains and run the boom, as I had no way to get the booms down, and it wouldn't pay me to invest in the boom chains; he said he had plenty of those and I said also, I says, 'We'll have no money when we get through here making this deal and I'll have to have some money to run the camp with; can I get what I need if I come down here?' He says 'Yes; that will be all right.' "

Besides this, he testified to other details and as to the amount and character of timber delivered, and as to the amount yet remaining upon the land when the breach of the alleged contract occurred. As to some of these matters, his testimony was corroborated by other witnesses. Upon rebuttal, he flatly contradicted the testimony of Mr. Ames and Mr. Patton, the appellant's officers, regarding the terms of the contract as appellant claims it was made. The question as to the terms of the contract virtually becomes one of veracity between Weber on one side, and Ames and Patton on the other, although the testimony given by the last two referred to different conversations, at none of which were they both present. It was contended by respondents that the price of timber went down during the existence of the contract, and that this was the motive of appellant in declining to carry out the same.

The credibility of witnesses is ordinarily for the jury. It is their province to weigh the testimony of witnesses in the light of all of the admitted and established facts in the case, and to arrive at their verdict accordingly. The appellant urges that a court may set aside a verdict for insufficiency of evidence, even though there be some evidence to sustain it. This is undoubtedly true, and has been so held by this court; but where the conflict of evidence is a substantial conflict, and where honest, intelligent, reasonable men, might reasonably differ as to what the verdict should be, the appellate court will ordinarily not reverse

a verdict which the trial court has considered upon appropriate motion and refused to disturb.

The evidence introduced by respondents, as to their second cause of action, before resting their case, was undoubtedly amply sufficient, if believed by the jury, to sustain a verdict in favor of respondents. The evidence introduced by the appellant, in so far as it tended to establish a defense, was contradicted by respondents' evidence in rebuttal. A jury and the trial judge saw the witnesses, and had the advantage of observing their conduct upon the witness stand, and their manner of testifying, and of weighing the evidence in the light of all the surrounding circumstances. We cannot say, as a matter of law, that the verdict of the jury should not have been for respondents. The evidence not being overwhelming in favor of appellant, and it appearing that there was competent evidence upon all of the material issues involved in the second cause of action, and a substantial conflict as to many of these questions, we are constrained to hold ourselves bound by the verdict, so far as it bears on those issues.

It is also contended by appellant that the trial court erred in a portion of its instructions given to the jury upon the question of the measure of damages. The record, however, is not such as to enable us to examine this error. It appears from the statement of facts that a stipulation was entered into, by which the attorneys of the respective parties hereto agreed that exceptions to the trial court's instructions might be taken at any time prior to the filing of a proposed statement of facts. Respondents contend that such a stipulation cannot be legally made, and is of no binding force. The statute, Bal. Code, § 5053, provides that an exception may be taken after the jury has retired, and, "if practicable, before the verdict has been returned." We think that a stipulation of this character, made in open court or made with the consent of the trial court, is binding

upon the parties to the extent of extending the time for any period not beyond the entry of the judgment. Where an exception to an instruction is attempted to be taken after the entry of judgment, it is a vain and useless ceremony. The purpose of taking an exception is to give the trial court a chance to correct the error. They should be taken before the jury returns with its verdict, so that the trial court, if it deem the exception well taken, may recall the jury and properly instruct them with reference to the matters in question; but if the respective parties are content to have the time extended and can get the consent of the trial judge to such extension, there is no one who can be heard to object. But when a motion for a new trial is interposed and disposed of, and final judgment rendered and entered, the trial court is no longer able to consider or correct errors which it may have made prior to judgment. If appeal is taken from said judgment, and the appellate court is called upon to review an exception taken after judgment, it involves the consideration of an alleged error which the trial court has never had an opportunity to correct. This court cannot consider an alleged error, excepted to in that manner. Every error of the trial court should be called to its attention in some manner. In the case at bar it appears that the exception to the questioned instruction was not filed until long after the entry of judgment, and it does not appear that it was ever called to the attention of the trial court. This being true, it must be disregarded here. In the case of *Jones v. Jenkins,* 3 Wash. 22, 27 Pac. 1022, this court said, "Every point relied upon as error here must have been called to the attention of the trial court in some manner and at the proper season." See, also, *Tingley v. Fairhaven Land Co.,* 9 Wash. 34, 36 Pac. 1098, and *Tacoma Grocery Co. v. Barlow,* 12 Wash. 21, 40 Pac. 380.

As to the first alleged cause of action in the complaint, we do not believe it states facts sufficient to constitute a

cause of action; but this point is not raised in the brief, and does not appear to have been raised in the lower court. It would therefore be disregarded, and the complaint deemed amended to correspond with the proof, if the latter were sufficient to sustain a cause of action. But the evidence in support of this alleged cause of action is meager, indefinite and uncertain; and is insufficient to show the amount of timber left upon the land, its reasonable market value at the time of breach of contract, and entirely wanting as to the cost of cutting and putting it in the river—all of which were facts necessary for respondents to establish as prerequisites to a recovery. We think there was a failure of proof to establish any damages under this alleged cause of action. One of the grounds of the motion for a new trial was "insufficient evidence to justify the verdict," and another ground was "error in assessment of amount of recovery." The jury appears to have allowed the full amount claimed by respondents in their evidence. This was erroneous to the extent of the $150 involved in the first cause of action. That amount will be deducted from the judgment entered by the superior court, and, as modified, said judgment in the sum of $562.37 will be affirmed. Costs in this court to appellant.

Mount. C. J., Dunbar, Crow, and Rudkin, JJ., concur.

Hadley and Fullerton, JJ., took no part.