Jones, J.
In actions for malicious prosecution, while malice is an essential element, the want of probable cause is the real gist of the action. If want of probable cause be proven, the legal inference may be drawn that the proceedings were actuated by malice. What constitutes probable *156 cause has been defined by this court in the early case of Ash v. Marlow, 20 Ohio, 119. It is there defined as: “A reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged.” This was substantially the definition given by Mr. Justice Washington, in Munns v. Dupont de Nemours & Bauduy, 3 Wash., 31.
In determining whether the defendant, in instituting the criminal proceeding, acted without probable cause, his conduct should be weighed in view of his situation at the time, and of the facts and circumstances which he knew or was reasonably chargeable with knowing when the proceedings were instituted. Having in mind these established legal principles, the question arises whether on this record the plaintiff below was entitled to prove his character and general reputation for honesty in making out his case in chief. It is the general rule that the plaintiff cannot show his good reputation until the defendant has subjected it to attack. This proceeds upon the theory that the plaintiff’s character is presumed to be good.
In cases of malicious prosecution, however, an exception has been made to this rule. And it has generally been held that the plaintiff may give, in chief, evidence of his good reputation if the defendant knew or ought to have known it when he made the criminal complaint.
“It is generally held that the plaintiff in an action for malicious prosecution is entitled to give evidence of his good character and reputation, and of the *157 defendant’s knowledge thereof at the time of the prosecution, as a circumstance tending to show want of probable cause, on the ground that when a person is about to make a criminal complaint against a citizen of previously known good character and reputation, it is reasonable that he should consider that fact with the other facts and circumstances in determining the question of the probability of the guilt of the accused.” 18 Ruling Case Law, 53.
In the foregoing text the author states that there is but little dissent from this obviously sound doctrine.
The reason for the adoption of this exception, permitting the plaintiff in actions for malicious prosecution to introduce evidence of good character and reputation, is that the defendant should be charged with every fact that he had knowledge of in relation to the plaintiff. It might be added that the defendant also should be charged with every fact with which he was reasonably chargeable with knowing in that connection. If the defendant knew that the plaintiff’s character and reputation for honesty was good, such fact should be taken into consideration as an element in determining whether the defendant had reasonable cause for making the complaint. It is evident, however, that if the defendant did not know and could not have reasonably known of this element when he instituted the proceeding he should not be chargeable with this as a factor in determining whether or not he acted without probable cause.
If it were not shown by concrete proof that he knew of such reputation, yet, if the defendant, at *158 the time he made the complaint, knew the plaintiff for a reasonable length of time, or for such length of time knew that such a man lived in the community, a prima facie showing would be thus made, whereby the court could permit testimony of the plaintiff’s good character and reputation to be introduced as evidence in chief. But if at the time of the admission, the record discloses no prima facie connection by which the defendant would be chargeable with knowledge of such reputation, it is impossible to see upon what principle the defendant would be bound by a circumstance which he neither knew nor could have known when he made the criminal complaint. Any other course of reasoning would require the defendant, at his peril, to go into the community and make inquiries as to the character and reputation of the man suspected.
In view of the principles stated, did the court err, on the state of this record, in permitting the plaintiff to offer testimony of his good reputation in chief, when the same had not been subjected to attack by the defendant? So far as this record discloses, neither Melanowski nor Judy had ever known or heard of one another until the day Judy was employed, which was the day previous to the filing of the complaint. The druggist to whom Melanowski applied for a man to clean his apartment recommended Judy only as a man who “can do the job.”
There is nothing in the record by which it can be surmised that the relative situation of the parties in this community was such as to make the defendant below chargeable with any knowledge of the *159 plaintiff’s reputation. The tendency of the plaintiff’s own evidence is to the effect that such knowledge could not possibly exist. The rule here announced cannot possibly do injustice to the plaintiff, for he has the benefit of the presumption of good character until such is attacked, but it might be a grave injustice to a defendant to permit the jury to fortify that assumption by evidence of good reputation that was neither known nor could have been known to the defendant.
We are not disposed to hold that a prima facie showing cannot be made whereby this evidence would become competent. Had evidence been offered tending to prove that the situation of the parties living in the same community was such that the defendant knew Judy, or for a reasonable length of time before the complaint was made knew that such a man existed, this would be a sufficient prima facie showing to entitle the plaintiff to put his good character in evidence and in chief. Since that was not done, the trial court erred in admitting the plaintiff’s evidence of his character and general reputation.
The judgments of the court of common pleas and the court of appeals are reversed, and the case remanded to the former for further proceedings according to law.

Judgments reversed.

Marshall, C. J., Johnson, Hough, Wanamaker and Robinson, JJ., concur.