[No. 9796. Department One. May 14, 1912.]

PACIFIC TELEPHONE AND TELEGRAPH COMPANY,
*Respondent*, v. JOHN T. HUETTER *et al.*,
*Appellants*.[1]

EVIDENCE—BEST AND SECONDARY EVIDENCE—WORK AND LABOR—REC-
ORDS—ACCOUNT BOOKS—AUTHENTICATION. The accounts shown by
record books of a telephone company made up from time slips and
oral reports sent in by numerous employees doing certain work, in
the regular course of business, are admissible in evidence without
producing the testimony of the men that they had correctly sent in
their time, where it was shown by the clerks that the accounts were
properly made up from the slips and correctly entered in the books;
it being the best evidence obtainable.

EVIDENCE—VALUE OF ARTICLES—COMPETENCY—SUFFICIENCY. The
manufacturer's current prices paid for articles made by only a few
concerns and having no fixed general or market value, the prices for
which varied from time to time with the market price of copper and
lead, is competent evidence of the value of the articles, and sufficient
in the absence of any contradictory evidence.

Appeal from a judgment of the superior court for Spo-
kane county, Neill, J., entered March 18, 1911, upon find-
ings in favor of the plaintiff, in an action for damages to
property, after a trial to the court. Affirmed.

*Merritt, Oswald & Merritt*, for appellants.
*Post, Avery & Higgins*, for respondent.

FULLERTON, J.—The respondent is a telephone company,
doing an exchange business in the city of Spokane and the
territory surrounding that city. The wires connecting with
its exchanges in the eastern part of the city and the outly-
ing territory easterly thereof are carried, for a part of the
way, on poles set on the margin of Sprague street, one of the
public streets in the city of Spokane. In the latter part of
the year 1908, the city of Spokane let a contract for a fill
on Sprague street, and the appellants undertook to do the

[1]Reported in 123 Pac. 607.

work for the original contractors. The appellants obtained material for the fill from the ledge of rock located on private property lying immediately north of a part of Sprague street, along which the respondent's telephone lines were strung. The rock or ledge was loosened by blasting, and these blasts when exploded caused pieces of rock and other debris to be thrown against the respondent's telephone wires and posts. The work on the fill extended over a considerable part of the year 1909, and the injuries to the poles and wires occurred almost daily, requiring a large amount of labor and much new material to keep them in repair. After the work had progressed for some time, the present action was brought to enjoin the appellants from so prosecuting the work as to injure the respondent's property, and to recover damages for the injuries suffered. After the commencement of the action, the future progress of the work was in some manner adjusted between the parties, and the action tried as one of damages for the injuries suffered. The action was tried by the court sitting without a jury, and resulted in a judgment in favor of the respondent for the sum of $1,-486.15; the sum of $843.65 thereof being for labor and the remainder for materials furnished.

In this court the appellants contend that the judgment of the court below was founded upon incompetent evidence. To an understanding of the contention, it is necessary to explain somewhat the respondent's method of making up the labor item. It was shown that the respondent kept constantly in its employ in and about the city of Spokane, for keeping its lines and telephones in order, some seventy-five or more men. These it kept in touch with largely by means of the telephone. The men were required to report each day over the telephone to the office of the company's city superintendent the places at which they worked and the number of hours they worked each day. These reports were made necessary by the fact that the men were paid at an increased wage for overtime—that is, for the number of hours they

put in exceeding the normal day of eight hours. The reports, when received by the city superintendent's clerk, were recorded by him on slips of paper prepared for that purpose, and forwarded on the next morning to the office of the district superintendent, where they were transcribed into the company's time book, the book in which the time or number of hours each employee was entitled to claim remuneration for was kept.

·After the trouble began on the Sprague street fill, the company adopted with reference to it a little different system. It required all men working at repair work made necessary by the blasting to report separately the time put in on such repairs. The time so reported was kept by the city superintendent's clerk on a separate piece of paper from that on which the regular reports were recorded, and were forwarded by him with the regular reports to the district superintendent's office. There a separate record of such work was made up, showing the name of the person performing the work, the number of hours put in by such person, the rate at which he was paid and the total so paid him. The slips were then filed away with the other records of the company. At the trial, these slips could not be produced. Their loss was accounted for by the fact that a traveling inspector had visited the Spokane office some months before the trial, and had what he called a "house-cleaning," in the course of which he burned a lot of supposedly useless records, among which were these slips.

The trial court admitted in evidence the record made in the district superintendent's office. The clerk from that office was produced, and testified that he had correctly transcribed into the record the reports contained on the slips of paper made to him from time to time by the clerk in the city superintendent's office, and the clerk in the latter office testified that he had correctly recorded on the slips forwarded to the first named office the time given in by the men who performed the work of repairing the damage caused the

line by the blasting at the Sprague street fill. In addition to this, it was shown by the foreman and employees of the company that the company had men at various times repairing the breaks caused by blasting; that at one time five poles were torn down and destroyed by a single blast, ruining the line for several blocks, and that as many as twenty-four or twenty-five men worked in repairing it from between 8 and 9 o'clock in the morning until 7 o'clock at night; six or seven of them, all that could be used to an advantage, continuing the work until midnight. Under the rule of the company, eight hours constituted a day's work, for which the men were paid three dollars and seventy-five cents. For extra time, they were allowed "a time and a half" for the three hours following the expiration of the eight-hour period, and "double time" from then on until the workman was relieved. At the trial, none of the men actually performing the repair work were called or questioned concerning the time they had put in on such work, or as to the correctness of the several reports made by them to the office of the city superintendent. It is for this latter reason that the appellants insist that the record offered in evidence is not competent proof. They contend that it is not sufficiently verified to bring it within any of the rules admitting books of account or other secondary evidence, because wanting in proofs that the several items of which it is made up were correct in their inception. The question thus suggested is not free from difficulty, and it may be that the weight of even modern authority is against the competency of the proofs offered. But we think the better rule is with the authorities which hold such proofs admissible. This rule is epitomized by Mr. Wigmore in the following language:

"The conclusion is, then, that where an entry is made by one person in the regular course of business, recording an oral or written report, made to him by one or more other persons in the regular course of business, of a transaction lying in the personal knowledge of the latter, there is no ob-

jection to receiving that entry under the present exception, provided the practical inconvenience of producing on the stand the numerous persons thus concerned would in the particular case outweigh the probable utility of doing so. Why should not this conclusion be accepted by the courts? Such entries are dealt with in that way in the most important undertakings of mercantile and industrial life. They are the ultimate basis of calculation, investment, and general confidence in every business enterprise; nor does the practical impossibility of obtaining constantly and permanently the verification of every employee affect the trust that is given to such books. It would seem that expedients which the entire commercial world recognizes as safe could be sanctioned, and not discredited, by courts of justice. When it is a mere question of whether provisional confidence can be placed in a certain class of statements, there cannot profitably and sensibly be one rule for the business world and another for the court-room. The merchant and the manufacturer must not be turned away remediless because methods in which the entire community places a just confidence are a little difficult to reconcile with technical judicial scruples on the part of the same persons who as attorneys have already employed and relied upon the same methods. In short, courts must here cease to be pedantic and endeavor to be practical." 2 Wigmore, Evidence, § 1530.

The question of the competency of the evidence here offered falls well within this rule. The original entries were made in the regular course of business from oral reports made by numerous different persons of transactions lying within their knowledge, and the practical inconvenience of producing such persons to testify would outweigh the probable utility of doing so. It is not probable that had these persons been called they could have testified to much more than the record now shows. They could scarcely have remembered after the lapse of time that intervened between the work and the trial the number of times they worked at such repairs or the number of hours they put in at each time they so worked. At most, all they could have said would have been that they performed work in repairing the lines and

made truthful reports thereof to the company's officers. But as we have shown, the record now shows by unquestionable evidence that they did perform such work, and that they made truthful reports thereof will be presumed until at least some evidence is introduced to impeach the presumption, of which there is nothing in this record. The record is admissible on the principle that books of account of the ordinary merchant are admissible, because it is the best evidence of which the case in its nature is susceptible. We think the record competent and fully supports the court's findings.

It is said this conclusion is contrary to the rule in the case of *Tingley v. Fairhaven Land Co.*, 9 Wash. 34, 36 Pac. 1098. But it will be observed that the question now before us was not presented in that case. The question there was as to the number of saw logs that had been put into a certain stream. The witness testifying, sought to use his books of account to refresh his memory as to this number, and the court very properly held that they were incompetent for that purpose, since it was shown that many of the items recorded therein were recorded by another and were never within the personal knowledge of the witness testifying. The books themselves were not offered as evidence. To put upon the case the construction put thereon by the appellant would make the case an authority for excluding the books of account kept by an ordinary merchant in the regular course of his business, and relied upon by him to show the status of his business and the state of his accounts between himself and his customers. This the court never intended to hold.

With reference to the materials furnished, the quantity and nature of the materials required to make the repairs were satisfactorily proven. It is objected that there was no competent evidence that the price charged for the several articles and allowed by the court was the reasonable value of such articles. It was shown that the articles were, for the greater part, manufactured by only a few concerns; that they had no general or fixed market value, and that the manu-

facturer's prices for them varied from time to time as the market value of copper and lead varied, and that the prices at which the respondent valued them were the current going prices of the concerns handling them or like articles at the time they were used in making the repairs. No evidence contradicting this was offered, and we think it sufficient to justify the finding of the trial court.

There is no error in the record, and the judgment appealed from will stand affirmed.

DUNBAR, C. J., MOUNT, GOSE, and PARKER, JJ., concur.