[No. 22446. Department Two. October 6, 1930.]

W. A. Atkin, *Respondent*, v. Long Lake Lumber Company, *Appellant.*[1]

*Cannon, McKevitt & Fraser,* for appellant.

*Thomas Corkery,* for respondent.

Holcomb, J.—Respondent sued appellant on an oral contract for a balance of $5,596 alleged to be due, with interest at the legal rate of six per cent from July 1, 1928, for logs sold by respondent to appellant between November 1, 1926, and July 15, 1927. By a trial amendment, over the objection of appellant, the date of last delivery of logs under the alleged contract was changed to July 26, 1927. No prejudice was shown by appellant, and the trial amendment was not an abuse of discretion by the trial court.

As stated in appellant's brief, the issue between the parties is a simple one; if respondent's figures were legally established and correct, the judgment

[1]Reported in 292 Pac. 104.

should be affirmed; if appellant's were legally established and correct, the judgment should be reversed.

There is no dispute on the amounts paid by appellant to respondent, but the dispute is as to the total number of feet of saw logs respondent furnished, which centers around the scaling of logs. Respondent alleged and testified that a specific scale at a specific place—namely, the railroad sidings around Republic— was agreed upon between the parties and carried out. After some negotiations between respondent and one Wall, the agent of appellant, a contract was agreed upon between the parties, after which the agreement was made with appellant at Spokane by and between respondent and James Brown, president of appellant.

The oral contract proven by respondent was, in substance, that twelve dollars per thousand feet was to be paid for the logs deliverable on cars in and around Republic, that the logs would be scaled at the landings and that appellant would send scalers to join in the scaling of the logs at the landings. Respondent claims to have delivered to appellant, between November 1, 1926, and July 26, 1927, 2,274,900 feet of logs, on which there is the balance unpaid alleged in his complaint. Appellant claims to have received only 1,410,450 feet, on which it confesses a balance due of $490.65. The trial court found the balance due respondent to be $4,635.36, allowed interest at six per cent from July 25, 1927, allowed taxes for 1926 on the logs, paid by respondent, with legal interest from March 1, 1927, and ordered judgment for the total sum of $5,400.46, which was entered.

Twenty-five errors are assigned by appellant, but, as stated in its brief, they have principally to do with the introduction over the objection of appellant of certain documentary evidence and the testimony of several witnesses. In order to sustain his claim, re-

spondent introduced in evidence certain exhibits that were numbered 1, 2 and 3; exhibit 2 being a large number of adding machine slips, and exhibit 3 being a summary of these slips showing the footage claimed by respondent to be correct. Exhibit 1 is not seriously contested on appeal. Appellant contends that the adding machine slips were not admissible under any rule of evidence and constitute no proof of the delivery of the number of feet of logs to appellant, even under the contract alleged by respondent.

Two scalers, named Eastman and Carmody, were sent by appellant to assist in the scaling of the logs at the sidings. Another agent of appellant, its log superintendent, Wall, scaled some as a representative of appellant. After most of the scaling had been done, respondent and president Brown of appellant agreed that respondent should finish the scaling alone, scaling as it had been done before, which respondent did, following out the instructions of Brown and scaling by himself 835,716 feet. Brown did not deny that that arrangement was made or that respondent did the scaling to the amount that he stated. Eastman corroborated respondent that Brown sent him to Republic, where he assisted respondent in scaling 1,339,-180 feet of the logs. Wall also testified that he was sent to Republic by appellant and assisted respondent in scaling part of the logs.

Eastman said that, when at Republic in the fall of 1926 and 1927, in behalf of appellant, in making his scale, he showed his scales to respondent in each case; that he and respondent then went to an adding machine, where Eastman called the figures off and respondent put them down. He examined exhibit 3 and said that, to the best of his knowledge, the figures looked all right and that was the way they did it. He testified that, from his own memoranda, made at the

same time he and respondent scaled the logs, the component parts of his scale, as shown on the exhibits, were 261,290 feet, 794,860 feet, and 283,030 feet, aggregating 1,339,180 feet.

On these adding machine slips, the following information was put: Description of the group of logs scaled that day and the number of feet each bunch of logs scaled. There were also certain names placed on each separate slip, being the names from whom respondent had bought the logs, which was made because respondent had bought the logs from the individuals whose names were placed thereon, and those sellers of logs were paid according to the scales so made and recorded.

Respondent's exhibit 2 is a summary of exhibit 3, and was apparently made for the convenience of the trial judge, trying the case without a jury. It is not to be assumed that the trial judge regarded it as competent and material in and of itself.

Appellant cites and quotes largely from *Tingley v. Fairhaven Land Co.*, 9 Wash. 34, 36 Pac. 1098, urging that, under that decision, the exhibits introduced in this case were incompetent for any purpose.

The question there was as to the number of saw logs that had been put into a certain stream. The witness testifying sought to use his books of account to refresh his memory as to this number, and the court very properly held that they were incompetent for that purpose, since it was shown that many of the items recorded therein were recorded by others, and were never within the personal knowledge of the witness testifying. The books themselves were not offered as evidence. *Pacific Tel. & Tel. Co. v. Heutter*, 68 Wash. 442, 123 Pac. 607. There is a vast difference between the memoranda attempted to be introduced in that case and in this. That case was simply one where a witness

attempted to fortify his testimony by reference to memoranda, when the entries were not made at the time as a result of matters wholly within his own knowledge, but were derived from reports of employees.

The exhibits in question here were far from the second-hand, somewhat hearsay evidence that book entries made in the ordinary system of bookkeeping of a concern often constitute. These entries were mutual. At least exhibit 2 was very nearly of the nature of primary evidence. It certainly was competent and relevant.

The exhibits in this case have much more probative force than those admitted and held to be competent in the *Pacific Tel. & Tel. Co.* case, *supra;* and are further sustained by our rulings in *Cascade Lumber Co. v. Aetna Indemnity Co.,* 56 Wash. 503, 106 Pac. 158; *Lawn v. Prager,* 67 Wash. 568, 121 Pac. 466; *Maher & Co. v. Farnandis,* 70 Wash. 250, 126 Pac. 542; *Lloyd v. Reinard,* 133 Wash. 114, 233 Pac. 292, and *Hartman Shoe Co. v. Hanson,* 135 Wash. 512, 238 Pac. 17.

This case was tried by the late Judge Neal, an able and experienced judge, who filed a memorandum decision of considerable length, showing studious care in dealing with all the issues between the parties. The evidence, both oral and documentary, was carefully analyzed and harmonized.

After examining the exhibits and the testimony relating thereto, we consider the evidence ample and quite convincing to sustain the findings, conclusions and judgment of the trial court.

The judgment is affirmed.

MITCHELL, C. J., MAIN, and FULLERTON, JJ., concur.