[No. 33406.   *En Banc.*   April 19, 1956.]

H. D. Bakenhus *et al., Respondents,* v. The City of Seattle
*et al., Appellants.*[1]

[1]Reported in 296 P. (2d) 536.

*A. C. Van Soelen, Glen E. Wilson,* and *C. V. Hoard,* for appellants.

*McMicken, Rupp & Schweppe,* for respondents.

*B. A. Farley, Paul F. Schiffner, W. C. Timothy, Elwood Hutcheson, John C. Tuttle, Richard G. Patrick, C. M. Boyle, Marshall McCormick, Omar S. Parker, Lester T. Parker, O. M. Nelson, Kenneth W. Hill, D. D. Schnatterly, Leslie R. Cooper, Arthur L. Haugan, W. V. Wells, Roy A. Holland,* and *Kenneth A. Cole, amici curiae.*

ROSELLINI, J.—This is an action by H. D. Bakenhus, a retired policeman, and his wife to compel the city of Seattle and the board of police pension fund commissioners of that city to pay him henceforth a pension of one hundred and eighty-five dollars a month and to recover judgment for the difference between one hundred and eighty-five dollars a month and the pension of one hundred and twenty-five dollars a month which he has been paid since his retirement on August 9, 1950. We shall refer to Mr. Bakenhus as the plaintiff.

When the plaintiff became a member of the Seattle police department in 1925, chapter 39 of the Laws of 1909, p. 59, as amended to that year (Rem. Comp. Stat., §§ 9579-9592, and Rem. Comp. Stat. (Sup.), § 9581), and particularly § 4 thereof as amended (Rem. Comp Stat., § 9582), provided that a member of the police department was eligible to retire on a pension after twenty years service if he had attained age sixty or after twenty-five years service if he had not reached that age. The pension was equal to one half the salary attached to the rank held by him for the year next preceding his retirement. The members' contributions to the pension fund were (and are) made by compulsory, non-refundable deductions from their salaries. At that time,

the contribution amounted to 1.5 per cent of their salaries. (In 1929 it was increased to 2 per cent.)

The plaintiff became a police captain January 1, 1943, and retained that status until he retired August 9, 1950. For the year before his retirement his salary was three hundred and seventy dollars a month.

The board of trustees of the police relief and pension fund, in authorizing the pension of one hundred and twenty-five dollars a month, allowed the maximum fixed by § 1 of chapter 24, Laws of 1937, p. 62 (Rem. Rev. Stat. (Sup.), § 9582), which amended the police relief and pension fund law by, *inter alia*, adding the following provisos:

"*Provided,* That no monthly pension allowed any member of the police department of any city which may be subject to the provisions of this act, shall exceed the amount of one hundred twenty-five ($125.00) dollars per month; *Provided, further,* That the auditor, city comptroller or officer whose duty it is to draw warrants, in making out warrants for the monthly salaries shall not deduct or withhold any part or percentage from any members' salary in excess of the amount deducted or withheld from the maximum salary rate on which the amount not exceeding one hundred twenty-five ($125.00) dollars the monthly pension is based."

The plaintiff obtained a judgment directing that he be paid a pension of one hundred eighty-five dollars a month, and also judgment for two thousand eight hundred and eighty dollars, that being the difference between the pension he had been paid from the date of his retirement to the date of the trial and the amount he would have received had he been paid at the rate of one hundred eighty-five dollars a month during that period. The defendants appeal.

It is the position of the plaintiff and the view adopted by the trial court that the first proviso heretofore quoted from the 1937 amendment impaired the obligation of Mr. Bakenhus' contract with the city and the pension fund board and is void as to him (and all who became members of the police department prior to the 1937 enactment).

The defendants contend that, under the rule adopted by the majority of courts in this country, the existence of legislation making pension and retirement provisions for mem-

bers of a police department and the acceptance or retention of employment does not establish a contract between the employee and the city; and that until the employee has fulfilled all of the conditions necessary to entitled him to a pension, he has acquired no vested right which can be impaired by intervening legislative changes in the pension system.

The plaintiff concedes that this is the majority rule, but urges that the modern trend is otherwise and more in accord with reason and justice. He relies particularly on a number of cases decided by the courts of California.

In this state, a pension granted to a public employee is not a gratuity but is deferred compensation for services rendered. The contractual nature of the obligation to pay a pension when the employee has fulfilled all of the prescribed conditions was recognized in *Luellen v. Aberdeen*, 20 Wn. (2d) 594, 148 P. (2d) 849 (1944), in *Benedict v. Board of Police Pension Fund Com'rs*, 35 Wn. (2d) 465, 214 P. (2d) 171, 27 A. L. R. (2d) 992 (1950), and in *Ayers v. Tacoma*, 6 Wn. (2d) 545, 108 P. (2d) 348 (1940). Had we held in those cases, or were we to hold now, that the pension statutes provide for the payment of gratuities, we would be bound to hold further that such statutes are contrary to the provisions of Art. II, § 25, and Art. VIII, § 7, of the Washington constitution and are therefore void.

For this reason, the cases from those jurisdictions which follow the so-called majority rule cannot be persuasive here, for, as was pointed out in *Kern v. Long Beach*, 29 Cal. (2d) 848, 179 P. (2d) 799 (1947), they were apparently decided under different constitutional provisions. The constitution of California, like that of this state, forbids the giving away of public funds; and in that jurisdiction, the rule is stated as follows:

"A pension is a gratuity only where it is granted for services previously rendered which at the time they were rendered gave rise to no legal obligation. . . . But where, . . . as here, services are rendered under such a pension statute, the pension provisions become a part of the contemplated compensation for those services and so in a sense a part of the contract of employment itself." *O'Dea*

*v. Cook,* 176 Cal. 659, 169 Pac. 366, quoted in *Kern v. Long Beach, supra.*

In *Holt v. Board of Police & Fire Pension Com'rs,* 86 Cal. App. (2d) 714, 196 P. (2d) 94, a policeman who had become disabled and resigned before applying for his pension was held to be entitled nevertheless to the benefits of the pension plan. In the course of its opinion, the court said:

"The pension provisions of the city charter are an integral portion of the contemplated compensation set forth in the contract of employment between the city and members of the police department, and are an inseparable part of that contract. Also, the right to a pension becomes vested upon the acceptance of such émployment by an applicant. (*Dryden v. Board of Pension Commissioners,* 6 Cal. 2d 575, 579 [59 P. 2d 104].)"

City firemen and policemen who were appointed before the effective date of a statutory amendment changing pension rates and terms, were held to be unaffected by that amendment in *Bowen v. Los Angeles,* 118 Cal. App. (2d) 297, 257 P. (2d) 672, the court saying:

"Pension rights, such as those here involved, are contractual in nature and they become vested at the time the employee enters the public service."

Similarly, in *Baker v. Retirement Board of Allegheny County,* 374 Pa. 165, 97 A. (2d) 231, a legislative change was declared inapplicable to employees who were hired before the enactment. The statutory amendment provided that no person who, at the time of employment as a county employee, was receiving or eligible to receive a retirement allowance from the commonwealth or any · political subdivision thereof, should be eligible to receive retirement allowance from the county retirement system. Speaking of the employee whose employment began prior to the enactment of this provision, the court said:

"As of the time he joined the fund, his right to continued membership therein, under the same rules and regulations existing at the time of his employment, was complete and vested. The legislature could not thereafter constitutionally alter the provisions of his already existing contract of membership. His rights in the fund could only be changed by

mutual consent: *Marshall v. Pilots Assn.*, 206 Pa. 182, 55 A. 916."

In New York the court has declared:

"Pension annuities . . . are in the nature of compensation for the services previously rendered for which full and adequate compensation was not received at the time of the rendition of such services. They are in effect pay withheld to induce long-continued and faithful service." *Giannettino v. McGoldrick*, 295 N. Y. 208, 66 N. E. (2d) 57.

■ This view is in accord with reason and justice and, as pointed out above, has already been recognized in this state. The problem arises in determining the extent of the contractual undertaking on the part of the state or municipal authority which has promised the pension. There are cases which hold that, since the right to receive a pension does not arise until all the conditions are fulfilled, the employee's rights must depend upon the law as it exists at that time. This view is insupportable. Unless the services are rendered in reliance on an offer, they are consideration for nothing, and any pension received thereafter can only be a gratuity. The promise on which the employee relies is that which is made at the time he enters employment; and the obligation of the employer is based upon this promise.

■ The contention is made that the employee waived his rights under the contract or consented to a modification by accepting salary advances beyond twice the amount of the maximum pension allowed under the 1937 statute ($125), and by not objecting to the deduction of contributions based upon that maximum pension. A similar contention was flatly rejected in *Atlanta v. Anglin*, 209 Ga. 170, 71 S. E. (2d) 419, a suit for a declaratory judgment brought by the city against certain retired firemen, wherein the court was asked to declare pension statutes enacted in 1924 and 1931 unconstitutional. The complaint alleged that the firemen had been paid pensions in accordance with a 1945 amendment to the pension statute, which provided for pensions not to exceed one hundred dollars per month, but had applied for an increase in the amount of their pensions based upon the provisions of the 1924 and 1931 acts.

The court held that these earlier acts were constitutional; that the firemen had acquired the right to be paid pensions in accordance with the provisions of these statutes; and that they were not estopped to assert this right by their conduct in not objecting to reduced deductions from their pay and in accepting benefits under the later amendments to the statutes, since both parties had equal knowledge or means of obtaining the truth, and the city was not misled. The amending acts of 1935 and 1945, decreasing the maximum pensions payable, were held to violate the contract clause of the state constitution. In the instant case, there is no evidence that the plaintiff received benefits under the 1937 act other than the reduced pension; and it is not suggested that he could have made an effective objection to the amount of contributions deducted from his salary.

The acceptance of the doctrine of waiver or estoppel would present numerous practical difficulties, which are unnecessary under the theory adopted by the California courts and others which follow the more enlightened trend.

This view, while it may not be flawless in a purely legalistic sense, gives effect to the reasonable expectations of the employee and at the same time allows the legislature the freedom necessary to improve the pension system and adapt it to changing economic conditions. Under the rule followed there, and the rule which we adopt here, the employee who accepts a job to which a pension plan is applicable contracts for a substantial pension and is entitled to receive the same when he has fulfilled the prescribed conditions. His pension rights may be modified prior to retirement, but only for the purpose of keeping the pension system flexible and maintaining its integrity. The doctrine was most recently stated in the consolidated cases of *Allen v. Long Beach* and *Alger v. Long Beach,* 45 Cal. (2d) 128, 287 P. (2d) 765 (1955), as follows:

"An employee's vested contractual pension rights may be modified prior to retirement for the purpose of keeping a pension system flexible to permit adjustments in accord with changing conditions and at the same time maintain the integrity of the system. [Citing cases]. Such modifications

must be reasonable, and it is for the courts to determine upon the facts of each case what constitutes a permissible change. To be sustained as reasonable, alterations of employees' pension rights must bear some material relation to the theory of a pension system and its successful operation, and changes in a pension plan which result in disadvantage to employees should be accompanied by comparable new advantages. [Citing cases.]"

It was held in these cases that an increase in the amount of an employee's contribution without a corresponding increase in benefit payments was unreasonable. The court further held, and here the holding is even more in point, that a change in method of computing benefits which rendered the system less flexible was disadvantageous to the employee and unjustified under any showing made by the city. There the previous system had provided that pension benefits would be payable on a fluctuating basis—one half of the salary currently attached to the position which the employee had held one year prior to his retirement. The subsequently adopted system provided for the payment of a flat amount—one half the average monthly salary earned by the employee during the five years preceding his retirement or death.

The situation here is much the same. Under the system provided by law at the time the respondent entered his employment, he was entitled to receive one half of the salary which he received during the last year before his retirement. While this system is not as flexible as that which the California court favored, it is certainly more flexible than the system adopted by the 1937 legislature, which limited the total amount payable to a pensioner to one hundred twenty-five dollars per month. At that time, it was one half the top salary paid to a police captain. Had a captain's salary been decreased in the succeeding years, the pensioner would receive less than the maximum, but with the increase which inevitably accompanied the inflation years, he received no corresponding increase in benefits.

The appellants have not shown wherein this arbitrary limitation was justified. It is true that other benefits were

added under the 1937 act, but they are not the benefits to which the respondent has become entitled by fulfilling the conditions necessary to receive a retirement pension. Approximately one third of the anticipated pension has been removed with no *corresponding* benefit, and no showing by the appellants that the reduction was necessary to preserve and perfect the system, nor that it bore any reasonable relation to the purposes of the pension plan.

The respondent has complied with the provisions of his contract. He has given twenty-five years of faithful service, during which time he turned down many other opportunities for employment; and, in the meantime, these opportunities necessarily have diminished. Until he had established his right to receive a pension by fulfilling the conditions, he could show no injury to himself by subsequent legislative changes and consequently could not complain. By waiting until those conditions were fulfilled, he has not lost his right to assert that he has been deprived of his rights by that legislation.

The judgment is affirmed.

MALLERY, SCHWELLENBACH, DONWORTH, FINLEY, WEAVER, and OTT, JJ., concur.

HILL, J. (dissenting)—If I understand the argument of the plaintiff aright, it is that the legislature, by subsequent enactment, can modify the original pension contract between him and the city and pension fund board only if he consents thereto. And if a change is favorable to him, by his silence and continuing employment he assents to the modification; if a change is unfavorable to him or subsequent events make it so, his silence and continuing employment have no effect whatsoever, and he can at any time, however remote, assert that he never consented to the change and that it impairs the obligations of his contract. To be more concrete, let us take a look at chapter 24 of the Laws of 1937, p. 62, which made several changes in the police relief and pension fund act as it existed when the plaintiff joined the Seattle police force and, so he claims, entered into a contract with the city.

Section 1 of the 1937 act, p. 62 (Rem. Rev. Stat. (Sup.), § 9582), incorporated three amendments in the police pension fund law: (1) It changed the requisite for retirement to service for twenty-five years or more, regardless of the applicant's age; (2) it added the proviso involved herein, limiting pensions to $125 a month; and (3) it added a second proviso, which in effect eliminated a deduction for the pension fund from any amount over $250 that an officer might receive as monthly salary.

Section 2 of the 1937 act, p. 63 (Rem. Rev. Stat. (Sup.), § 9583), limited pensions given to police officers disabled in service to one hundred twenty-five dollars a month and deleted from § 3 of chapter 18, Laws of 1911, p. 58 (Rem. Rev. Stat., § 9583), the words, "but on the death of such pensioner his heirs or assigns, shall have no claims against or upon such police relief or pension fund."

Section 3 of the 1937 act, p. 63 (Rem. Rev. Stat. (Sup.), § 9585), increased the amount of the pension payable to the widow or children of a police officer who lost his life by violence while engaged in the performance of his duty, from one third to one half the salary attached to the rank which such officer held at the time of his death (without limiting the amount of the pension).

Section 4 of the 1937 act, p. 64 (Rem. Rev. Stat. (Sup.), § 9586), provided that in the event of the death of a police officer with five years service or more, his widow or children under sixteen or certain other dependents would be entitled to one thousand dollars from the fund, whereas prior to 1937 such a payment was made only when the officer had died from natural causes.

Section 5 of the 1937 act, p. 64 (Rem. Rev. Stat. (Sup.), § 9588), made it possible to continue a pension or allowance to a retired police officer's dependents or his legally appointed guardian even though, under the terms of that section, the retired officer himself would have no further right to receive the pension or allowance. (Loss of his rights might be occasioned by his conviction of a felony, becoming an habitual drunkard, failing to report for examination as required, or disobeying requirements of the board.)  That

section also eliminated continuing residence within the state as a requisite to eligibility for a pension and removed limitations on the powers of the board as to its requirements which could lead to loss of pension rights.

Thus it will be seen that the 1937 act, while it limited pensions of police officers to one hundred twenty-five dollars a month, liberalized the benefits payable in several particulars. Under the plaintiff's "Heads, I win; tails, the city loses" concept of modification of his claimed contract, he could and did approve the changes beneficial to him and, after sixteen years of silence (1937 to 1953), can say that he never assented to that portion of § 1 of the 1937 act which limited his pension to one hundred twenty-five dollars a month.

Plaintiff apparently recognized the anomaly of making such a claim after accepting the benefits of another portion of the same section which limited the amount of his salary from which the two per cent deduction for the police relief and pension fund could be made, inasmuch as on August 4, 1953, shortly before the commencement of this action, he belatedly tendered two per cent of that portion of his salary over two hundred fifty dollars for the period from January 1, 1943, when his salary first exceeded two hundred fifty dollars, to August 9, 1950, when he retired.

Actually, to be consistent, the plaintiff should not have made such a tender but should have sued the city for the difference between the two per cent deducted from his salary from June 12, 1929 (the effective date of chapter 101, Laws of. 1929, p. 199; Rem. Rev. Stat., § 9581), to the date of his retirement, and the 1.5 per cent deduction authorized at the time he joined the police department in 1925 (chapter 54, Laws of 1923, p. 177; Rem. Comp. Stat. (Sup.), § 9581). Either plaintiff had forgotten this provision of his claimed contract or he concluded that his acquiescence in the two per cent deduction for more than twenty years constituted consent to that modification of his contract.

It should also be noted that there have been several changes since 1925 relative to the city's payments into the

police relief and pension fund, changes which no doubt were necessary to keep the fund solvent. In 1925, the contract, if it was a contract, provided that the city of Seattle should transfer to the fund specified portions of its revenues received from certain taxes, sales, licenses, fines, and forfeitures. Chapter 54, Laws of 1923, p. 177; Rem. Comp. Stat. (Sup.), § 9581. By chapter 101, Laws of 1929, p. 199 (Rem. Rev. Stat., § 9581), the proportionate share of the pension fund from those sources was increased (and the members' contributions were increased from 1.5 per cent to two per cent of their salaries). And chapter 30, Laws of 1933, p. 180 (Rem. Rev. Stat. (Sup.), § 9581), directed the transfer into the fund each year from license fees, fines, and forfeitures (without the previous limitations) an amount which, together with the amounts deducted from salaries, would meet the financial requirements of the fund. This last would seem to amount to a practical guarantee of the solvency of the pension fund (which is, more accurately, a retirement pay, disability, and death benefit fund).

To all of these changes in his 1925 contract the plaintiff, we assume, has assented, because they represent only additional burdens upon the city.

The general rule as to the contractual rights of contributing members in a government-supported pension system is as stated in *Lickert v. Omaha* (1944), 144 Neb. 75, 84, 12 N. W. (2d) 644:

"The existence of legislation making pension and retirement provisions for members of a police department and the acceptance or retention of employment as a member of a police department does not establish a contract, between the member and the city, that such members will thereafter be granted the retirement and pension benefits provided in such legislation.

"The right of the legislative body to amend the pension law is not affected by the fact that a given sum was required by law to be deducted and was deducted each month from the police officer's pay by the disbursing officer and paid into a pension fund; such a provision in legal effect says that the officer shall receive each month the net amount payable to him.

"Until the particular event happens upon which the pension is to be paid there is no vested right in the police officer to such payments.

"The legislative change amending the pension provisions, previous to the happening of one or more of the conditions mentioned in the act, impairs no absolute right of property in the police officer."

However, in cases where participation in the pension plan is voluntary on the part of the employee, such payments have been held to constitute sufficient consideration to make the pension plan contractual. *In re Sanborn* (1930), 159 Wash. 112, 292 Pac. 259; *Raines v. Board of Trustees of Illinois State Teachers' Pension & Retirement Fund* (1937), 365 Ill. 610, 7 N. E. (2d) 489; *Keegan v. Board of Trustees of Illinois Municipal Retirement Fund* (1952), 412 Ill. 430, 107 N. E. (2d) 702.

There would also seem to be a basis for a very convincing argument for regarding the pension plan as contractual in those cases, such as the present, where the amount paid by the employee, even though compulsory, is not returnable to him if his employment is terminated, by death or otherwise, prior to his eligibility for retirement. The distinction between the refundable payment and the nonrefundable payment is that the employee making the former has, until his right to a pension accrues, an opportunity to evaluate the payments made against the pension provided, and to make his choice between a refund and a pension, while the employee making nonrefundable payments has no such choice. It could well be argued that the pension in the latter case is presently contractual because a nonrefundable payment is as much a consideration as the first payment on an annuity contract, and, whether the plan be called a pension plan or an annuity contract, the person paying is entitled to benefits on the terms of the plan existing at the time of the first payment, or upon any modification thereof agreed to by the parties. The fact that the payments may be smaller than those required by insurance companies under experience and mortality tables to mature policies for similar amounts should not detract from the contractual relation in

such a case, the wisdom of the rates not being within the province of the courts but a matter for the legislature. Acquiescence in any proposed modification as indicated by legislative changes would probably have to be assumed unless prompt notice was given of a refusal to agree to any proposed change.

However, a determination of whether the plaintiff did or did not have a contract is not necessary in the present case, as the decision would be the same under either the general rule or the suggested exception thereto, because the plaintiff assented to the modifications, which precludes the recovery he seeks.

Obviously, the parties to an executory contract can modify it by mutual agreement. *Tingley v. Fairhaven Land Co.* (1894), 9 Wash. 34, 36 Pac. 1098; *Shell Oil Co. v. Wright* (1932), 167 Wash. 197, 202, 9 P. (2d) 106; *Robinson v. Shell Oil Co.* (1933), 172 Wash. 611, 618, 21 P. (2d) 246. If a pension plan for public employees is contractual in character, a legislative change can be made therein without impairment of the existing contracts only if the other parties thereto agree to the change as a modification of the contract.

If a contractual relationship existed, the enactment of § 1 of chapter 24, Laws of 1937, p. 62, served as notice of the intention of the city to limit pension payments from the police relief and pension fund in the manner indicated as to all who thereafter contracted with the city for a pension, and to modify the existing pension contracts to conform thereto in so far as it had the power to do so within constitutional limitations.

If the existence of a contract in the present case is assumed, although not determined, the question is: Did the plaintiff acquiesce in or agree to the changes in his pension contract proposed by the legislation enacted in 1937?

I believe that he did. It has already been pointed out that chapter 24, Laws of 1937, p. 62, while it placed a limit on the amount of the pension that would be paid a police officer upon retirement, liberalized other provisions of the policemen's relief and pension act, including a provision in § 1 that limited the two per cent deductions to two hundred

fifty dollars of the salary received. Deductions from plaintiff's salary were limited to two per cent of two hundred fifty dollars after his salary was increased to more than that amount January 1, 1943. When he accepted benefits under the 1937 act, he acquiesced in all the modifications that that act made in his contract unless he in some way made known the specific modifications to which he did not assent.

Another basis for a determination that the plaintiff acquiesced in the 1937 act is that he accepted salary increases subsequent to that enactment above the salary scale in force at the time the act became effective. When wages and pension benefits of public employees are inextricably combined, as they are under chapter 39 of the Laws of 1909 as amended [cf. RCW 41.20], any salary increase which could affect the amount of the pension to be paid on retirement must be regarded as conditioned upon the acquiescence by the employee benefited thereby in any pension limitations in effect at the date of the increase. A city might well be willing to increase a police captain's salary from two hundred fifty dollars to three hundred seventy dollars a month for the relatively short period that he serves as captain if his pension would not be affected thereby, but be entirely unwilling to increase his salary in that amount if it would entail an additional sixty dollars a month in his pension, which could continue for many years after his retirement.

If a pre-existing contract is assumed, the acceptance by the plaintiff of an increase in salary above two hundred fifty dollars, the salary schedule for a police captain in the Seattle police department in 1937, when the pension limitation amendment was enacted, constituted acquiescence by him in the changes made in his pension contract by that amendment, as did his acceptance of the benefit of the limitation of his payments into the pension fund to two per cent of two hundred fifty dollars a month.

I find no merit in plaintiff's contention, based upon § 6 of chapter 24, Laws of 1937, p. 65 (Rem. Rev. Stat. (Sup.), § 9592-1), that the amendments contained in that chapter

were not intended to apply to him and the other police officers similarly situated.

Under either the general rule or the suggested exception, the result would be the same. I would reverse the judgment and direct the entry of a judgment of dismissal.

HAMLEY, C. J., concurs with HILL, J.

[1]Reported in 296 P. (2d) 521.