T.C. Summary Opinion 2006-45

UNITED STATES TAX COURT

ANDREW J. EBERLY AND RUTHANNE E. EBERLY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6926-04S.          Filed March 29, 2006.

<u>Gary C. Randall</u> and <u>James J. Workland</u>, for petitioners.

<u>Catherine L. Campbell</u>, for respondent.

CARLUZZO, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  Unless otherwise
indicated, subsequent section references are to the Internal
Revenue Code in effect for 2000.  The decision to be entered is
not reviewable by any other court, and this opinion should not be
cited as authority.

Respondent determined a $36,859 deficiency in petitioners'
2000 Federal income tax.

The issue for decision is whether a distribution
constructively received in 2000 by Andrew J. Eberly (petitioner)
from his father's estate is includable in petitioners' income for
that year as income in respect of a decedent within the meaning
of section 691(a).

Background

Some of the facts have been stipulated and are so found.  At
the time the petition was filed, petitioners resided in Colbert,
Washington.

Petitioner's father, William S. Eberly (decedent), was born
on November 9, 1925, and died on February 28, 2000.  He was
survived by three sons, one of whom is petitioner.  At the time
of his death, decedent was a participant in the Central
Washington University (CWU) Retirement Plan (the CWU retirement
plan), a qualified plan within the meaning of section 403(b)(1).
The CWU retirement plan provides, in relevant part, that the
minimum distributions from the plan must begin no later than
April 1 of the calendar year following the calendar year in which
the participant attains the age 70-1/2, or, if later, April 1
following the calendar year in which the participant retires from
CWU.  Decedent retired from CWU on December 16, 1999.  Given his

age at the time, the minimum distributions under the CWU retirement plan would have begun no later than April 1, 2000.

Teachers Insurance and Annuity Association and College Retirement and Equities Fund (TIAA-CREF) are the fund sponsors of the CWU retirement plan. TIAA-CREF provides, in general, various annuity plan options for participants in the CWU retirement plan.

The TIAA-CREF annuity provisions state that a participant "may during his lifetime, without the consent and to the exclusion of any other person, receive, exercise, and enjoy every benefit, option, right and privilege conferred" by the TIAA-CREF annuity plan. After a participant's termination of employment, the TIAA-CREF annuity provides the participant with the option to receive a lump-sum benefit from the participant's accumulated annuity funds. A request for a lump-sum distribution must be made before the start of any annuity payments. Such a request "cannot be revoked after the effective date" of the lump-sum distribution request. The value of the accumulated annuity funds for a lump-sum distribution is determined as of the end of the business day on which TIAA-CREF receives the participant's request for a lump-sum distribution.

Under the TIAA-CREF annuity's death benefits provision, if the participant dies prior to the annuity starting date then TIAA-CREF pays the participant's accumulated annuity funds to the participant's named beneficiaries. The participant may designate

or change the death benefits beneficiaries by giving written notice to TIAA-CREF's home office in New York City.

With respect to the procedures for elections and requests, the TIAA-CREF annuity provides, in part, as follows:

> An election or change may be made, in accordance with the terms of your certificate, by written notice satisfactory to [TIAA-CREF]. No such notice will take effect unless it is received by [TIAA-CREF] at its home office in New York, NY. Any notice of change in Beneficiary or other person named to receive payments will take effect as of the date it was signed, whether or not the signer is living at the time we received it. Any other notice will take effect as of the date it is received. * * *

On February 21, 2000, prior to the annuity start date, decedent executed a Request for a Retirement Annuity Withdrawal (withdrawal request). The withdrawal request directed TIAA-CREF to withdraw $600,000 from decedent's accumulated annuity fund balance and to deposit these funds into decedent's designated savings account. The withdrawal request was signed and dated by decedent and mailed to TIAA-CREF's home office in New York City by priority mail. The withdrawal request was received at TIAA-CREF's home office on February 28, 2000, and, as provided by the TIAA-CREF annuity, made effective as of that date.

On February 21, 2000, petitioner also executed a Designation of Beneficiary, which was mailed to TIAA-CREF's home office by priority mail. The Designation of Beneficiary named decedent's three sons as beneficiaries, each entitled to a death benefit equal to 25 percent of the annuity fund balance, with

the remaining 25 percent to be equally divided among three specifically identified charitable organizations. The Designation of Beneficiary was received by TIAA-CREF on February 29, 2000.

On February 28, 2000, TIAA-CREF was orally notified by CWU of decedent's death.[1] Pursuant to the withdrawal request, on March 3, 2000, TIAA-CREF electronically transferred $480,308 to decedent's bank account. This amount included interest for the 3 days from the date the withdrawal request was received until March 3, less $120,000 of Federal income tax withholdings. For the year 2000, TIAA-CREF issued to decedent a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., that reported the gross amount and taxable amount of the distribution to decedent, as well as the Federal tax withheld by TIAA-CREF on the distribution.

Decedent's last will and testament provided that the residuary of decedent's estate was to be divided equally among decedent's three children. The amount distributed by TIAA-CREF to decedent on March 3, 2000, was divided among decedent's three children by the personal representative of decedent's estate. On April 25, 2000, the personal representative issued three separate

---

[1] As of that date, the balance of decedent's TIAA-CREF accumulated annuity fund was $953,996. This balance does not take into account decedent's $600,000 withdrawal request.

checks each in the amount of $150,000 to Farmer's New World Life Insurance Company. Each $150,000 check was issued for an individual retirement account (IRA) in the name of each of decedent's three children.

On decedent's 2000 Form 1040, U.S. Individual Income Tax Return, the personal representative reported the lump-sum distribution from decedent's TIAA-CREF accumulated annuity fund as reported on the Form 1099-R. However, the personal representative erroneously reported the taxable amount of the distribution to be $149,949.[2]

On decedent's Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, the personal representative included the remaining balance of decedent's TIAA-CREF accumulated annuity funds in decedent's gross estate.[3] On Form 1041, U.S. Income Tax Return for Estates and Trusts, decedent's estate did not report any amount with respect to

[2] This amount reflects the taxable amount of the distribution reported on the Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., less the $450,000 received by decedent's three children. The personal representative erroneously determined that the $450,000 received by decedent's three children for the three IRAs was a tax-free "roll-over" under sec. 403(b)(8).

[3] After decedent's death, TIAA-CREF computed the 25 percent death benefits distribution to the charitable beneficiaries based upon the balance in the annuity fund after the $600,000 distribution to decedent.

decedent's distribution from the TIAA-CREF accumulated annuity funds.

Petitioners did not include the $150,000 distribution petitioner constructively received from his father's estate on their timely filed, joint 2000 Federal income tax return.

In the notice of deficiency, respondent determined that the $150,000 constructively received by petitioner is includable in petitioners' income as income in respect of a decedent under section 691. Other adjustments made in the notice of deficiency are computational and not in dispute.

Discussion

At the outset we note that petitioners now acknowledge the errors made on decedent's final Federal income tax return and estate tax return. They distance themselves from those errors and also retreat from their position taken earlier that, if otherwise includable in their income, the $150,000 distribution was subject to exclusion on account of the "roll over". Respondent does not suggest that any of these errors in any way estop petitioners from their present position that the $150,000 distribution, constructive or otherwise, was an excludable inheritance, see sec. 102(a), and not income in respect of a decedent within the meaning of section 691(a). Furthermore, nothing in the record suggests that there has been any deviousness or mischief surrounding the dates reflected on the

operative CWU retirement plan documents.  Consequently, we turn our attention to the controlling Federal and State law that informs the manner in which we resolve the issue here in dispute.

Section 61(a) provides that gross income includes all income from whatever source derived, including income from annuities and "income in respect of a decedent".  Sec. 61(a)(9), (14).

Section 403(b)(1) generally provides that if an annuity contract is purchased for an employee by certain tax-exempt employers, or for an employee who performs services for an educational organization by an employer as described in section 403(b), and if certain other requirements are met, then amounts contributed by such employer for such annuity contracts shall be excluded from the gross income of the employee for the taxable year.  Amounts distributed from employee annuity contracts under section 403(b) are taxable to the distributee in the year in which distributed under section 72.  Sec. 403(b)(1).

Section 72(e) provides, in general, that if a distribution is received prior to the annuity starting date, in a form other than an annuity, such distribution shall be included in gross income.  Under the general rule, amounts received before the annuity starting date are included in income to the extent such amounts are allocable to income on the contract, and not included in income to the extent such amounts are allocable to the investment in the contract.  Sec. 72(e)(2)(B).

Section 691 concerns the taxation of income in respect of a decedent (IRD). Section 691(a) provides in part:

> (1) General rule.--The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period * * * shall be included in the gross income, for the taxable year when received, of:
>
> > (A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent;
> >
> > (B) the person who, by reason of the death of the decedent, acquires the right to receive the amount, if the right to receive the amount is not acquired by the decedent's estate from the decedent; or
> >
> > (C) the person who acquires from the decedent the right to receive the amount by bequest, devise, or inheritance, if the amount is received after a distribution by the decedent's estate of such right.

Section 1.691(a)-1(b), Income Tax Regs., provides that "income in respect of a decedent" refers to those amounts to which a decedent was entitled as gross income but that were not properly includable in computing taxable income for the taxable year ending with the date of death or for a previous taxable year under the method of accounting employed by the decedent. The character of an item of IRD to the successor is the same character as the item would have had in the decedent's hands "if the decedent had lived and received such amount." Sec. 691(a)(3).

The CWU retirement plan, which includes the TIAA-CREF annuity, qualifies as a tax-deferred plan under section 403(b)(1). Accordingly, distributions under the CWU retirement plan are taxable under section 72.

Respondent contends that the amount received by petitioner was a death benefits distribution from the TIAA-CREF annuity and IRD under section 691(a). According to respondent, the $150,000 distribution to petitioner is taxable under section 72 as if decedent had received such amount. Petitioners and respondent, of course, disagree on this point, but seem to agree that State law controls the outcome. Respondent argues that TIAA-CREF improperly and mistakenly gave effect to the withdrawal request because decedent had died before the request was received. Respondent's argument is based upon the premise that the death of petitioner's father in some manner or another voided the withdrawal request. The manner in which the relevant events unfolded, however, demonstrates that respondent's view is somewhat unique. TIAA-CREF, the personal representative of decedent's estate, and the three charities named in the change of beneficiary apparently do not share respondent's view.[4]

---

[4] We note that the three charities that were designated beneficiaries under decedent's TIAA-CREF annuity would have been entitled to share a significantly larger death benefit distribution under respondent's position.

Furthermore, we find no support for respondent's position under Washington State law.  The Supreme Court of Washington has held that "a pension granted to a public employee * * * is contractual in nature."  Jacoby v. Grays Harbor Chair & Manufacturing Co., 468 P.2d 666, 669 (Wash. 1970); see also Caughey v. Employment Sec. Dept., 503 P.2d 460 (Wash. 1972); Bakenhus v. Seattle, 296 P.2d 536 (Wash. 1956).  In Boeing Airplane Co. v. Firemen's Fund Indem. Co., 268 P.2d 654, 658 (Wash. 1954), the court stated that "Where the terms of a contract taken as a whole are plain and unambiguous, the meaning of the contract is to be deduced from its language alone, and it is unnecessary for a court to resort to any aids to construction."  Furthermore, "Where contractual language is unambiguous courts will not read ambiguity into the contract." Jacoby v. Grays Harbor Chair & Manufacturing Co., supra at 670.

The CWU retirement plan and TIAA-CREF annuity are contracts. The TIAA-CREF annuity provides that decedent could "during his lifetime * * * receive, exercise, and enjoy every benefit, option, right and privilege conferred" by the TIAA-CREF annuity. One such right conferred by the TIAA-CREF annuity is the participant's right to elect to receive a lump-sum distribution from his accumulated annuity funds prior to the annuity start date.  With respect to exercising the right to a lump-sum distribution, the TIAA-CREF annuity specifically provides that

any such election must be made in writing and received by TIAA-CREF at its home office. These terms are plain and unambiguous.

Prior to his death and the annuity start date, decedent elected to receive a lump-sum distribution. In accordance with the TIAA-CREF annuity's requirements, decedent's withdrawal request was made in writing and mailed to TIAA-CREF's home office. The withdrawal request was received at TIAA-CREF's home office on the same date as decedent's death. While TIAA-CREF was notified of decedent's death, decedent's withdrawal request was made effective by TIAA-CREF on the date received per the terms of the TIAA-CREF annuity. The record is clear that TIAA-CREF processed the distribution to decedent as a lump-sum distribution. TIAA-CREF subsequently distributed the funds to decedent. In accordance with the TIAA-CREF annuity's provisions, TIAA-CREF calculated and paid interest to decedent on the $600,000 distribution for the time between the effective date of the withdrawal request and the date the funds were electronically transferred to decedent's savings account. TIAA-CREF also withheld Federal income tax on the funds distributed to decedent. Finally, TIAA-CREF issued a Form 1099 to decedent which reported the taxable amount of his lump-sum distribution.

The TIAA-CREF annuity provided decedent with the option of electing to receive a lump-sum distribution. Decedent exercised this option to receive a lump-sum distribution during his

lifetime in accordance with the TIAA-CREF annuity's requirements. Upon receipt of the dated and signed withdrawal request from decedent, TIAA-CREF's obligation to distribute the funds became absolute.  See, e.g., <u>Macartney v. Parmenter</u>, 109 F. Supp. 493 (D.R.I. 1952); <u>Pac. States Life Ins. Co. v. Bryce</u>, 67 F.2d 710 (10th Cir. 1933).  Receipt of decedent's withdrawal request and actual payment to decedent during his lifetime were not required by the terms of the TIAA-CREF annuity.

The receipt by TIAA-CREF of the dated and signed withdrawal request from decedent constituted an effective exercise by him of his right to a lump-sum distribution during his lifetime.  The lump-sum distribution from TIAA-CREF was income to decedent and properly includable in his 2000 gross income.  Therefore, we hold that the $150,000 received by petitioner was not a death benefits payment and is not includable in petitioners' gross income under section 691(a) as IRD.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioners</u>.