[No. 57869-3-I.   Division One.   November 19, 2007.]

DAVID MCALLISTER ET AL., *Appellants*, v. THE CITY OF BELLEVUE FIREMEN'S PENSION BOARD, *Respondent*.

*Hans E. Johnsen*, for appellants.

*Lori M. Riordan, City Attorney*, and *Cheryl Ann Zakrzewski, Assistant*, for respondent.

¶1 SCHINDLER, J. — On March 1, 1970, all fire fighters and law enforcement officers became members of the "Law Enforcement Officers' and Fire Fighters' System Pension Plan," (LEOFF) chapter 41.26 RCW, to the exclusion of any pension system under a prior act. In recognition of the Washington State Supreme Court decision in *Bakenhus v. City of Seattle*, 48 Wn.2d 695, 296 P.2d 536 (1956), the LEOFF statute, RCW 41.26.040(2), requires a comparison between the benefits a member would have received under a prior pension plan to determine whether he is entitled to an excess payment to fully compensate for the amount he would have received if LEOFF were not enacted. David McAllister and Ken McAllister challenge the City of Bellevue Firemen's Pension Board's (Pension Board) decision to prospectively calculate the benefits they would have

received under their prior pension plan, the "Firemen's Relief and Pensions—1955 Act" (1955 Act), chapter 41.18 RCW, using the 1955 Act "salary" definition instead of the "salary" definition under LEOFF. Because we conclude the Pension Board did not err, we affirm.

¶2 The facts are not in dispute. In January 1965, the City of Bellevue Fire Department hired David McAllister and Ken McAllister. As required by the 1955 Act, the McAllisters and the City each contributed to the Firemen's Pension Fund. The 1955 Act required every fire fighter to contribute six percent of his basic salary to the pension fund. The contribution was capped at the salary of a battalion chief. RCW 41.18.010(4) defines "basic salary" as

> the basic monthly salary, including longevity pay, attached to the rank held by the retired fireman at the date of his retirement, without regard to extra compensation which such fireman may have received for special duties assignments not acquired through civil service examination: PROVIDED, That such basic salary shall not be deemed to exceed the salary of a battalion chief.

¶3 In 1969, the legislature replaced the municipal police and firemen pension plans with LEOFF, a single statewide pension system administered by the Department of Retirement Systems. On March 1, 1970, the McAllisters and all other full time fire fighters and law enforcement officers became members of LEOFF, "to the exclusion of any pension system existing under any prior act." RCW 41.26.040(1).

¶4 Under LEOFF, the six percent contribution rate for fire fighters is not capped at the Battalion Chief salary as it was under the 1955 Act. RCW 41.26.030(13)(a) defines "basic salary" as

> the basic monthly rate of salary or wages, including longevity pay but not including overtime earnings or special salary or wages, upon which pension or retirement benefits will be computed and upon which employer contributions and salary deductions will be based.

¶5 To make sure that a fire fighter or law enforcement officer who made contributions under a previous pension act would suffer no diminution in benefits, RCW 41-.26.040(2) provides for an "excess" payment. Under RCW 41.26.040(2), fire fighters and law enforcement officers are entitled to an "excess" payment if his pension, as computed under the previous pension act, would have been greater than the pension as computed under LEOFF. If the fire fighter is entitled to an excess payment, the City is responsible for payment. RCW 41.26.040.

¶6 On February 1, 1975, David McAllister retired from the Bellevue Fire Department on a work-related disability. When David McAllister retired, he was the Chief of the Bellevue Fire Department. On May 6, 1983, Ken McAllister retired from the Bellevue Fire Department on a work-related disability. When Ken McAllister retired, he was the Deputy Chief of the Bellevue Fire Department.

¶7 In 1997, the City determined that the excess payments for a number of the retired fire fighters, including David and Ken McAllister, were incorrectly calculated. In determining the excess payment for the McAllisters, the City had calculated the benefits they would have received under the 1955 Act by using the Chief and Deputy Fire Chief salary instead of using a battalion chief's salary as required by the 1955 Act. The resulting overpayment to the McAllisters totaled approximately $500,000.

¶8 In 2003, the City retained an actuarial firm to conduct an audit of their calculation of the excess payments. As a result of the audit, the City recommended that the Pension Board correctly calculate the excess payments under LEOFF for David and Ken McAllister by using the battalion chief salary as required by the 1955 Act.

¶9 On November 26, 2003, the Pension Board voted to correct the error in calculating the McAllister's benefits effective January 1, 2004. The Pension Board concluded the City had miscalculated the McAllisters' pension benefits for determining excess payments by using the definition of "basic salary" from LEOFF instead of the "basic salary"

definition from the 1955 Act. The Pension Board decided to correct the error prospectively and to not seek reimbursement from the McAllisters for the overpayments.

¶10 The McAllisters appealed the Pension Board's decision to the hearing examiner. The hearing examiner denied the appeal. The examiner concluded the Pension Board did not err in deciding to calculate whether the McAllisters were entitled to an excess payment under LEOFF by using the salary of a battalion chief under the 1955 Act. On February 22, 2005, the Pension Board adopted the recommendation of the hearing examiner.

¶11 On February 24, the McAllisters filed a writ of review. The superior court concluded the Firemen's Pension Board did not err and denied the writ of review. The McAllisters appeal the order denying the writ of review and the decision of the Pension Board.

¶12 The McAllisters do not contend that the LEOFF statute is unconstitutional. Instead, the McAllisters argue that because the contributions they made under LEOFF were six percent of their actual salary rather than six percent of the salary of a battalion chief, the Pension Board's decision to calculate the benefits they would have received under the 1955 Act is unlawful. Relying on *Bakenhus*, 48 Wn.2d 695, *Dailey v. City of Seattle*, 54 Wn.2d 733, 344 P.2d 718 (1959), and an earlier version of RCW 41.26.040(2), the McAllisters assert the Pension Board must use the salary definition in LEOFF to calculate the amount they would have received under the 1955 Act in determining whether they are entitled to an excess payment. Neither the LEOFF statutes nor case law support the McAllister's argument.

¶13 The court sits in the same position as the superior court when reviewing an administrative decision. *Swoboda v. Town of La Conner*, 97 Wn. App. 613, 617, 987 P.2d 103 (1999). We review the factual findings to determine whether they are supported by competent and substantial evidence. We review the conclusions of law de novo. *Biermann v. City of Spokane*, 90 Wn. App. 816, 821, 960 P.2d 434 (1998).

¶14 Interpretation of a statute is a question of law that we review de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). The primary objective in statutory interpretation " 'is to ascertain and give effect to the intent of the legislature.' " *King County v. Taxpayers of King County*, 104 Wn.2d 1, 5, 700 P.2d 1143 (1985) (internal quotation marks omitted) (quoting *Janovich v. Herron*, 91 Wn.2d 767, 771, 592 P.2d 1096 (1979)). If the language of a statute is clear and unambiguous, we must give effect to that plain meaning as an expression of legislative intent and there is no room for judicial interpretation. *Campbell & Gwinn*, 146 Wn.2d at 9-10. " '[T]he court should assume that the legislature means exactly what it says. Plain words do not require construction.' " *City of Kent v. Jenkins*, 99 Wn. App. 287, 290, 992 P.2d 1045 (2000) (internal quotation marks omitted) (quoting *State v. McCraw*, 127 Wn.2d 281, 288, 898 P.2d 838 (1995)).

¶15 In *Bakenhus*, the court held that pension rights are contractual in nature and a public employee has a right to receive the pension benefits in effect at the time the employee was hired. *Bakenhus*, 48 Wn.2d at 701. In *Dailey*, the court held that the members of a pension system "will be presumed to have acquiesced in legislative modifications that do not unreasonably reduce or impair existing pension rights; or, stated positively, if the modifications are reasonable and equitable." *Dailey*, 54 Wn.2d at 738. In determining whether a change in pension rights is equitable, the change must be weighed against preexisting rights to determine whether it is reasonable. *Dailey*, 54 Wn.2d at 741.

¶16 RCW 41.26.040(2) provides in pertinent part:

> (2) Any employee serving as a law enforcement officer or fire fighter on March 1, 1970, who is then making retirement contributions under any prior act shall have his membership transferred to the system established by this chapter as of such date. Upon retirement for service or for disability, or death, of any such employee, his retirement benefits earned under this

chapter shall be computed and paid. In addition, his benefits under the prior retirement act to which he was making contributions at the time of this transfer shall be computed as if he had not transferred. For the purpose of such computations, the employee's creditability of service and eligibility for service or disability retirement and survivor and all other benefits shall continue to be as provided in such prior retirement act, as if transfer of membership had not occurred. The excess, if any, of the benefits so computed, giving full value to survivor benefits, over the benefits payable under this chapter shall be paid whether or not the employee has made application under the prior act. . . . [P]ayment of such excess shall be made by the employer which was the member's employer when his transfer of membership occurred.

¶17 As the Washington Supreme Court noted in *Mulholland v. City of Tacoma*, 83 Wn.2d 782, 522 P.2d 1157 (1974), RCW 41.26.040(2) was, in effect, a codification of the decision in *Bakenhus*. In *Mulholland*, the court held that the purpose of RCW 41.26.040(2) is to ensure that a fire fighter who retires under LEOFF will not suffer any diminution in the benefits that would have been available if LEOFF had not been enacted.

¶18 Under the plain and unambiguous language of RCW 41.26.040(2), the McAllisters had the right to be treated as if they had retired under the 1955 Act. The statute requires the Pension Board to calculate the benefits under the 1955 Act and then compare that amount to what the McAllisters would receive under LEOFF. If the amount is greater under the 1955 Act, the retiree is entitled to an excess benefit payment. RCW 41.26.040(2). Under the 1955 Act, each fireman contributed "a sum equal to six percent of his basic salary" and was entitled to receive a monthly sum equal to 50 percent of his or her salary up to the position of battalion chief at the date of retirement. RCW 41.18.030, .010(4), .060.

¶19 For purposes of determining whether the McAllisters were entitled to an excess benefit payment under LEOFF, RCW 41.26.040(2) requires the City to calculate

the amount the McAllisters would have received under the 1955 Act as if the transfer to LEOFF had not occurred. Under the plain and unambiguous language of RCW 41-.26.040(2), the City must use the definitions of the 1955 Act, including the 1955 Act "salary" definition, to calculate the amount the McAllisters would have received to determine whether the McAllisters are entitled to an excess payment. While the "salary" definition of LEOFF is used to calculate the amount the McAllisters are entitled to under LEOFF, using the LEOFF "salary" definition to calculate the benefits for the 1955 Act is contrary to the plain language of the statute.

¶20 We also conclude that the City's calculation does not violate *Bakenhus* or *Dailey*. While there is no dispute that the McAllisters' contribution rate under LEOFF was more than the contribution rate under the 1955 Act, according to the unchallenged conclusion of the hearing examiner and the Pension Board, the McAllisters received increased benefits under LEOFF, including medical coverage for life and a survivor benefit of 100 percent of the retiree's pension.[1]

¶21 The McAllisters rely on an earlier version of RCW 41.26.040(2) to argue that the City must use the contribution rate under the 1955 Act in calculating the excess payment under LEOFF. The McAllisters' argument is also misplaced.

¶22 The first version of RCW 41.26.040(2), that was enacted on July 1, 1969, did not change the contribution rate. Former RCW 41.26.040(2) (1969) provided in pertinent part that

> [a]*ny employee who has made retirement contributions under any prior act shall have his membership transferred to the system established by this 1969 amendatory act on March 1, 1970*: PROVIDED, HOWEVER, That *for purposes of employee contribution rate*, creditability of service, eligibility for service

---

[1] To the extent the McAllisters' are challenging the increased contribution rate under LEOFF, their claim is against the State, not the Pension Board.

or disability retirement, and survivor and all other benefits, such employee shall also continue to be covered by the provisions of such prior act which relate thereto, as if this transfer of membership had not occurred.

LAWS OF 1969, Ex. Sess., ch. 209, § 4 (emphasis added).

¶23 But before the effective date of March 1, 1970 for transferring membership to LEOFF, the legislature amended RCW 41.26.040(2). This amended version, enacted on February 12, 1970, deletes any reference to "employee contribution rate":

(2) Any employee serving as a law enforcement officer or fire fighter on March 1, 1970, who ((has made)) is then making retirement contributions under any prior act shall have his membership transferred to the system established by this chapter ((on March 1, 1970: PROVIDED, HOWEVER, That for purposes of employee contribution rate, creditability of service, eligibility for service or disability retirement, and survivor and all other benefits, such employee shall also continue to be covered by the provisions of such prior act which relate thereto, as if this transfer of membership had not occurred)) as of such date.

LAWS OF 1970, 1st Ex. Sess., ch. 6, § 2.

¶24 Because the legislature amended RCW 41.26.040(2) before the LEOFF retirement system took effect, the McAllisters do not have a right to the contribution rate under the 1955 Act.

¶25 We affirm the Pension Board and the superior court decision to dismiss the writ.

APPELWICK, C.J., and AGID, J., concur.

Review granted at 164 Wn.2d 1002 (2008).