210 P.3d 1002 (2009)
David McALLISTER and ken McAllister, Petitioners,
v.
CITY OF BELLEVUE FIREMEN'S PENSION BOARD, Respondent.
No. 81187-3.
Supreme Court of Washington, En Banc.
Argued June 11, 2009.
Decided July 9, 2009.
*1003 Hans Eric Johnsen, Attorney at Law, Bellevue, WA, for Petitioners.
Cheryl Ann Zakrzewski, Siona Dee Windsor, Bellevue, WA, for Respondent.
Daniel G. Lloyd, City of Vancouver Attorney's Office, Vancouver, WA, Amicus Curiae on behalf of Washington State Association of Municipal Attorneys.
STEPHENS, J.
¶ 1 As fire fighters for the city of Bellevue (the City), David and Ken McAllister (the McAllisters) made contributions to a pension fund for many years under the "Firefighters' Relief and Pensions-1955 Act," chapter 41.18 RCW (1955 Act). By the time the men retired, the 1955 Act had been replaced by the Law Enforcement Officers' and Fire Fighters' System Pension Plan (LEOFF), chapter 41.26 RCW, effective March 1, 1970. The City is required under LEOFF to pay the McAllisters the difference, if any, between their benefits under LEOFF and what their benefits would have been had they retired under the 1955 Act. This is called an excess payment. For many years the City calculated the excess payment due to the McAllisters by using definitions contained in LEOFF rather than the 1955 Act, resulting in what the City later determined was an overpayment to the McAllisters of around $500,000. When the overpayment was discovered, the City began paying the McAllisters a reduced excess payment, but did not seek reimbursement. The McAllisters challenge that action. This case presents a question of statutory interpretation. We affirm the Court of Appeals and hold that under LEOFF the City is required to calculate excess payments based upon the statutory definitions in the 1955 Act.

FACTS
¶ 2 The facts of this case are not in dispute. McAllister v. City of Bellevue Firemen's Pension Bd., 142 Wash.App. 250, 252, 180 P.3d 786 (2007). In 1965, the McAllisters went to work for the Bellevue Fire Department. They contributed to the City's firemen's pension fund under the 1955 Act, *1004 which required every fire fighter to contribute six percent of his basic salary to the fund. The 1955 Act capped a contributor's basic salary at that of a battalion chief. A battalion chief is a lower rank than either the deputy chief or the chief of the department, the ranks at which the McAllisters later retired.
¶ 3 On March 1, 1970, the 1955 Act, which was administered by individual municipalities, was replaced by LEOFF, a single statewide pension system administered by the State Department of Retirement Systems. Under LEOFF, an employee's contribution rate remains at six percent of his basic salary. However, the basic salary is not capped at the battalion chief salary but is commensurate with the employee's actual salary. In addition, LEOFF provides for an "excess" payment if a fire fighter's pension, as computed under the 1955 Act, would have been greater than the pension as computed under LEOFF. If the fire fighter is entitled to an excess payment, the City, not the State, is responsible for payment. RCW 41.26.040(2).
¶ 4 David McAllister retired from the fire department on February 1, 1975, having attained the rank of chief of the Bellevue Fire Department. Ken McAllister retired on May 6, 1983, having attained the rank of deputy chief. Pursuant to RCW 41.26.040(2), the McAllisters received an excess payment from the City. However, for many years the City calculated the benefits the McAllisters would have received under the 1955 Act by using the chief and deputy chief salaries the McAllisters retired at (in other words, by using the LEOFF definition of basic salary) instead of the battalion chief salary required by the 1955 Act. As a result, the McAllisters received a combined pension payment totaling approximately $500,000, more than they would have received had the definition of basic salary under the 1955 Act been used.
¶ 5 The City did not seek reimbursement from the McAllisters, but it decided to correct what it regarded as a mistake prospectively by using the battalion chief salary for its future calculations. The McAllisters unsuccessfully appealed this decision to a hearing examiner with the Bellevue Firemen's Pension Board (Pension Board). The McAllisters then filed a writ of review in King County Superior Court, which was denied. The McAllisters appealed to Division One of the Court of Appeals, which affirmed the judgment of the Pension Board and the superior court. McAllister, 142 Wash.App. 250, 180 P.3d 786. The McAllister's petitioned for review with this court, which we granted at 164 Wash.2d 1002, 190 P.3d 54 (2008). After we granted review, the Washington State Association of Municipal Attorneys filed an amicus brief in support of the City's position.

ISSUE
¶ 6 Did the City err when it concluded it must base its pension calculations on the basic salary as defined under the 1955 Act rather than under LEOFF?

ANALYSIS
¶ 7 A public employee's pension is "not a gratuity but is deferred compensation for services rendered." Bakenhus v. City of Seattle, 48 Wash.2d 695, 698, 296 P.2d 536 (1956). Although an employee may have vested contractual pension rights, the pension system may be modified prior to an employee's retirement in order to keep the system flexible enough to "`permit adjustments in accord with changing conditions and at the same time maintain the integrity of the system.'" Id. at 701, 296 P.2d 536 (quoting Allen v. City of Long Beach, 45 Cal.2d 128, 131, 287 P.2d 765 (1955)). But because of the compensatory nature of pensions, we have recognized that modifications to a pension plan that "`result in disadvantage to employees should be accompanied by comparable new advantages.'" Id. at 702, 296 P.2d 536 (quoting Allen, 45 Cal.2d at 131, 287 P.2d 765). Without comparable new advantages attendant to a disadvantageous change to a pension system, the modification is void and unconstitutional. Id. at 702-03, 287 P.2d 765. If a modification is unconstitutional, "a pensioner's rights will be determined by the latest act which can be constitutionally applied to him." Vallet v. City of Seattle, 77 Wash.2d 12, 21, 459 P.2d 407 (1969).
¶ 8 To ensure that LEOFF remained consistent with Bakenhus, the legislature enacted *1005 RCW 41.26.040(2), which guarantees that "a fire fighter who retires under LEOFF will not suffer any diminution in the benefits that would have been available if LEOFF had not been enacted." McAllister, 142 Wash.App. at 257, 180 P.3d 786 (citing Mulholland v. City of Tacoma, 83 Wash.2d 782, 522 P.2d 1157 (1974)).
Any employee serving as a law enforcement officer or firefighter on March 1, 1970, who is then making retirement contributions under any prior act shall have his membership transferred to the system established by this chapter as of such date. Upon retirement for service or for disability, or death, of any such employee, his retirement benefits earned under this chapter shall be computed and paid. In addition, his benefits under the prior retirement act to which he was making contributions at the time of this transfer shall be computed as if he had not transferred.

RCW 41.26.040(2) (emphasis added). Pursuant to the statute, the McAllisters received an excess payment under the 1955 Act in addition to their payment under LEOFF.
¶ 9 The plain language of RCW 41.26.040(2) further requires that an excess payment be calculated under the prior retirement system, not under LEOFF. "For the purpose of such computations, the employee's creditability of service and eligibility for service or disability retirement and survivor and all other benefits shall continue to be as provided in such prior retirement act, as if transfer of membership had not occurred." RCW 41.26.040(2). Under the 1955 Act, a fire fighter "contributed `a sum equal to six percent of his basic salary' and was entitled to receive a monthly sum equal to 50 percent of his or her salary up to the position of battalion chief at the date of retirement." McAllister, 142 Wash.App. at 257, 180 P.3d 786 (quoting 1955 Act provisions RCW 41.18.030, .010(4), .060). Thus, the statute plainly required the McAllisters' benefits to be calculated using a battalion chief's salary.
¶ 10 The McAllisters argue, however, that an excess payment calculated upon a battalion chief's salary runs afoul of Bakenhus. They argue that although the 1955 Act paid out pension benefits based upon a battalion chief's salary, which was lower than the McAllisters' salaries at retirement, the McAllisters were correspondingly required under the 1955 Act to contribute only six percent of a battalion chief's salary, not six percent of their full salary. In contrast, although under LEOFF the McAllisters receive a higher monthly benefit upon retirement based upon their actual salary, their rate of contribution is no longer capped at a battalion chief's salary. Hence, argue the McAllisters, once LEOFF was imposed, they lost their right under the 1955 Act to capped contributions. Pet. for Review at 9. The only way to remedy this loss in accordance with Bakenhus, they argue, is for the City to continue to base excess payments under the 1955 Act upon the McAllisters' full salaries.
¶ 11 This argument misapprehends the statutory scheme. First, Bakenhus is not violated here.[1] When the 1955 Act was replaced by LEOFF, the McAllisters did lose a capped contribution rate, but they also enjoyed a pension payment commensurate with their actual salary. In addition, LEOFF provides many benefits not provided in the 1955 Act, such as medical coverage for life and survivor benefits of 100 percent of the retiree's pension. McAllister, 142 Wash. App. at 258, 180 P.3d 786. Second, the McAllisters' argument requires this court to replace the definition of basic salary contained in the 1955 Act with that contained in LEOFF. We cannot do so without violating well-settled principles of statutory interpretation. We cannot "delete language from an unambiguous statute." State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003). The statutes at issue here unambiguously require that excess payments be calculated according to the provisions of the pension system under which they are paid.
*1006 ¶ 12 The McAllisters argue that regardless of the plain language of the 1955 Act and LEOFF, it is apparent from legislative history that the legislature intended LEOFF's basic salary definition to be applied to calculations made under the 1955 Act. They point to the language of the original version of LEOFF's RCW 41.26.040(2), which was enacted during a special legislative session on July 1, 1969. McAllisters' Suppl. Br. at 5. While the original version of RCW 41.26.040(2) noted that employees would have their retirement memberships transferred to LEOFF effective March 1, 1970, it provided exceptions to total transfer for an employee's contribution rate and other benefits. McAllister, 142 Wash.App. at 258-59, 180 P.3d 786. But as the Court of Appeals noted, the 1969 version of RCW 41.26.040(2) would not have taken effect by its terms until March 1, 1970. Prior to March 1, 1970, on February 12, 1970, the legislature amended RCW 41.26.040(2) to its current version, which contemplates a total transfer of membership from previous pension plans to LEOFF, with no exceptions. Thus, the McAllisters' argument regarding legislative intent is misplaced because the version of the statute they would like to invoke never took effect.
¶ 13 The McAllisters insist that the July 1, 1969 version of RCW 41.26.040(2) did become effective prior to its amendment in February 1970 because under article II, section 41 of the Washington State Constitution, all laws become effective 90 days after the legislature's adjournment. Reply Br. of McAllisters at 10. But in fact, all laws become effective 90 days after the legislature's adjournment "unless a contrary intent is specifically indicated in the particular legislative enactment." DeGrief v. City of Seattle, 50 Wash.2d 1, 9, 297 P.2d 940 (1956) (emphasis added). Here, the legislature specifically indicated that LEOFF would not take effect until March 1, 1970, after the February amendment striking the language upon which the McAllisters rely.
¶ 14 In the final analysis, the City is correct that the McAllisters may be trying to "cherry pick" the best of LEOFF and the 1955 Act. Suppl. Br. of Resp't at 7. We view such attempts with disapproval. Vallet, 77 Wash.2d at 21, 459 P.2d 407. In Vallet, the petitioner retired at the rank of an inspector in 1965. The question before this court in Vallet was whether a 1915 act or a 1961 act determined the amount of benefits due. Id. at 16, 459 P.2d 407. The 1915 statute provided a pension at one-half an inspector's salary, but that amount was fixed. Id. at 16-17, 459 P.2d 407 (citing Laws of 1915, ch. 40, § 2). The 1961 statute's pension was capped at one-half of a captain's salary, a lower rank than inspector, but escalated with the pay of captains in active service. Id. (citing Laws of 1961, ch. 191, § 1). Vallet sought to blend the two statutory schemes to achieve a pension at one-half the salary of inspector, as under the uncapped 1915 statute, which would escalate like pensions under the 1961 statute. Id. at 19, 459 P.2d 407. We concluded that we could not allow a scenario "whereby a pensioner is entitled to select the best parts of several pension acts relating to him. To hold otherwise would have a serious effect on the everyday administration of pension plans in this state." Id. at 21, 459 P.2d 407 (emphasis added).
¶ 15 To read the LEOFF statutes to allow the McAllisters to "blend" the best of two different pension plans would run counter to our holding in Vallet and introduce instability into the administration of the plans. Because the McAllisters do not ask us to declare RCW 41.26.040(2) unconstitutional, and a lawsuit against the City's Pension Board is not the proper venue to address this issue at any rate, we cannot apply parts of the 1955 Act and parts of the current LEOFF act to the McAllisters' situation.

CONCLUSION
¶ 16 Accordingly, we affirm the Court of Appeals and hold that the Pension Board committed no error when it upheld the City's decision to calculate the McAllisters' excess payment according to the basic salary under the 1955 Act rather than under LEOFF.
WE CONCUR: GERRY L. ALEXANDER, Chief Justice, SUSAN OWENS, CHARLES W. JOHNSON, MARY E. FAIRHURST, BARBARA A. MADSEN, *1007 JAMES M. JOHNSON, RICHARD B. SANDERS and TOM CHAMBERS, Justices.
NOTES
[1] Although Bakenhus dealt with a challenge to the constitutionality of a pension plan, the McAllisters maintain that their reliance on Bakenhus is not meant to invoke a constitutional challenge. Reply to Answer for Pet. for Review at 1. This is appropriate given that any constitutional challenge to LEOFF should be lodged against the State, not the City's Pension Board.